**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| RICHARD WOLFGRAM; | ) | |
| JOHN M.; | ) | |
| CHRISTOPHER HOLVENSTOT.; | ) | |
| JOHN DOE; | ) | |
| MICHAEL de KONING; and, | ) | |
| JONATHAN M. | ) | |
| | ) | |
| *Plaintiff(s),* | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| DAVID MILLER; | ) | JURY DEMANDED |
| LAKE FOREST COMMUNITY HIGH SCHOOL | ) | |
| DISTRICT 115; and, LAKE FOREST HIGH | ) | |
| SCHOOL, | ) | |
| | ) | |
| *Defendant(s).* | ) | |
| | ) | |

## COMPLAINT AT LAW

Plaintiffs, RICHARD WOLFGRAM, JOHN M., CHRISTOPHER HOLVENSTOT, JOHN DOE, MICHAEL de KONING and JONATHAN M., by and through their attorneys, GOLDBERG & GOLDBERG and for as their Complaint against Defendants, DAVID MILLER, LAKE FOREST COMMUNITY HIGH SCHOOL DISTRICT 115, and LAKE FOREST HIGH SCHOOL, (collectively "LAKE FOREST SCHOOL DISTRICT"), hereby states as follows:

### BACKGROUND

1.     At all times material, Defendant, LAKE FOREST COMMUNITY HIGH SCHOOL DISTRICT 115 ("DISTRICT 115") was an organization authorized to conduct business in the State of Illinois, with its principal place of business in Lake Forest, Illinois. Defendant, LAKE FOREST COMMUNITY HIGH SCHOOL DISTRICT 115, includes any other organizations and/or entities operating under the same or similar name with the same or similar principal place

of business.

2.     DISTRICT 115 is comprised, in part, by Lake Forest High School ("LFHS").

3.     At all times relevant hereto, LFHS, was under the direct authority and control of DISTRICT 115.

4.     Currently, and at all relevant times, Defendant MILLER was a resident of Lake Bluff, Illinois.

5.     At all relevant times, MILLER was acting as an agent and employee of LFHS and DISTRICT 115.

6.     MILLER worked for the DISTRICT 115 from 1966 to 2009, both as a full-time permanent teacher at LFHS (through 2002) and as a contract employee working in the Theater Department (2002-May 2009).

7.     The plaintiffs were individually students at LFHS and had DAVID MILLER as both a teacher and as an advisor to the Tech Crew in the Theater Department.

8.     At all relevant times, DISTRICT 115 supervised its employees' and agents' activities, including those of MILLER, and assumed responsibility for the well-being of minor students, including plaintiffs.

9.     At all relevant times, DISTRICT 115 received federal funds and was required to comply with Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et seq.

**MILLER'S HISTORY OF ABUSE OF STUDENTS**

10.     Throughout his tenure as a teacher, head of the Theater Department, and head of the Telecom program, MILLER was permitted by DISTRICT 115 to supervise children at LFHS with little or no training, oversight, or supervision.

11.     DISTRICT 115 had actual knowledge of MILLER'S temper, in which he would

direct extreme anger and inappropriate language, including sexually charged language, towards students a LFHS in public and in view of other students and faculty at DISTRICT 115.

12.　　MILLER used his temper and outbursts to control students.  At times MILLER used his temper to intimidate students.  At other times, MILLER used his temper to groom a favored student, by directing his temper to classmates with whom the favored student was having a disagreement. In effect, MILLER used his authority and his temper to act as a white knight for a favored student.

13.　　MILLER would typically target LFHS students enduring and experiencing difficulty at home, including the death of friends or family, divorce, and those having difficulty socializing with their classmates.

14.　　Upon information and belief, throughout his tenure as a teacher, head of the Theater Department, and head of the Telecom program, MILLER groomed and sexually abused male students consistently for nearly 35 years.

15.　　MILLER utilized the facilities provided to him by DISTRICT 115 at LFHS to engage in grooming of male students and childhood sexual abuse of male students.

16.　　In addition, MILLER invited students to travel with him, including internationally, and to his home where MILLER would provide the students alcohol.  Faculty and administration were aware of this practice but did not stop it.

17.　　MILLER used his home and the provision of alcohol to groom students, progressing with inappropriate physical contact including hugs, back rubs, roughhousing, kissing, fondling, and oral sex.

18.　　In 1991 MILLER was charged with misdemeanor battery of a student.  LFHS was notified of this conduct had actual knowledge of the battery.

19.     In 2009, MILLER was accused of making inappropriate comments to a male student over G-chat (electronic chat).   DISTRICT 115 allowed MILLER to resign without reporting or making public these allegations.

20.     Despite DISTRCIT 115's knowledge of MILLER'S long history of inappropriate comments and sexual battery of male students, even after MILLER's resignation in 2009, DISTRICT 115 continued to publicly celebrate MILLER in the Lake Forest community.

21.     As set forth in greater detail below, throughout this time and for years prior to taking any action with respect to MILLER, DISTRICT 115 was aware of widespread reports about MILLER'S inappropriate sexual conduct with students but chose to ignore those reports and to take no action to protect its students.

## MILLER'S ABUSE OF JOHN M.

22.     In the fall of 1976 or spring of 1977, MILLER held a party at his home, attended by members of the theater stage crew, including JOHN M. ("JOHN M.").

23.     JOHN M. was male about 13 or 14 at the time of the party.

24.     MILLER requested JOHN M. stay after to help clean up.

25.     After other party attendees left the home, MILLER made an unsolicited offer to rub JOHN M.'s back.

26.     After rubbing JOHN M.'s back, MILLER then reached his hands down JOHN M.'s pants and began touching JOHN M.'s penis.

27.     JOHN M. did not know how to respond. His reaction was to lie still, almost catatonic.

28.     MILLER continued to touch JOHN M.'s penis for approximately 5 minutes. MILLER then stopped and provided a ride home.

29.     As a result of the foregoing, JOHN M. has suffered and continues to suffer injuries, including but not limited to, severe and permanent emotional distress, resulting in physical manifestations, embarrassment, loss of self-esteem, humiliation, physical, personal, and psychological injuries. JOHN M. was prevented and continues to be prevented, from performing normal daily activities and obtaining full enjoyment of life and/or has incurred and will continue to incur expenses for psychological treatment, therapy, and counseling and, on information and belief has and/or will incur loss of income and/or loss of earning capacity.

30.     JOHN M. did not discover that the act of childhood sexual abuse occurred and that his injury was caused by the childhood sexual abuse until years later, at the earliest in July of 2019.

### MILLER'S ABUSE OF CHRISTOPHER HOLVENSTOT

31.     MILLER'S abuse of CHRISTOPHER HOLVENSTOT ("CHRISTOPHER H.") occurred between the fall of 1977 and spring of 1979.

32.     CHRISTOPHER H. was a male, between 15 years and 17 years old at the time of MILLER's abuse.

33.     MILLER was the CHRISTOPHER H.'s teacher at LFHS.

34.     At the time MILLER was CHRISTOPHER H.'s teacher a LFHS, CHRISTOPHER H. was experiencing emotional and physical abuse at home.  MILLER was aware of CHRISTOPHER H.'s experiences at home and used this information to groom CHRISTOPHER H. for sexual abuse.

35.     During this time, MILLER asked CHRISTOPHER H. to design sets for a production of a school play and asked CHRISTOPHER H. to come to MILLER's home to discuss this work.

36.     At MILLER's home, MILLER offered CHRISTOPHER H. beers to drink.

MILLER then began joking and wrestling with CHRISTOPHER H. MILLER then began fondling CHRISTOPHER H. MILLER then performed oral sex on CHRISTOPHER H.

37.     CHRISTOPHER H. left MILLER's home crying uncontrollably. MILLER insisted on giving CHRISTOPHER H. a ride home. CHRISTOPHER H. felt as though he had to say accept and got in MILLER's car. During the car ride, CHRISTOPHER H. cried so hard tears were squirting onto the car dash and CHRISTOPHER H.'s lap. MILLER promised CHRISTOPHER H. nothing would ever occur again.

38.     MILLER broke his promise. A second event occurred on a school trip to Mexico. Every year MILLER brought a group of boys to Mexico for Spanish immersion. CHRISTOPHER H. was invited by MILLER to join. Upon arrival in Mexico, CHRISTOPHER H. learned that all the boys in the group were paired up in rooms and CHRISTOPHER H. learned he was paired up in a room with MILLER.

39.     When alone in the room MILLER began joking, getting physical, and pressuring CHRISTOPHER H. to sleep with MILLER in his bed.

40.     CHRISTOPHER H. told MILLER he needed to join the rest of the group. MILLER became enraged but conceded and the arrangements were changed for the remainder of the trip.

41.     A third incident occurred when MILLER wanted to discuss a theater project. CHRISTOPHER H. did not want to go to MILLER's home but agreed to go canoeing on Lake Michigan. During that day MILLER and CHRISTOPHER H. came upon an empty shore near a ravine. At that time, MILLER grabbed CHRISTOPHER H.'s crotch.

42.     After the last incident of abuse, CHRISTOPHER H. dropped MILLER's Spanish class, causing MILLER to scream at CHRISTOPHER H. and his guidance counselor. MILLER also screamed at CHRISTOPHER H. in public at LFHS while he continued to design sets for

theater programs.

43.     As a result of the foregoing, CHRISTOPHER H. has suffered and continues to suffer injuries, including but not limited to, severe and permanent emotional distress, resulting in physical manifestations, embarrassment, loss of self-esteem, humiliation, physical, personal, and psychological injuries. CHRISTOPHER H. was prevented and continues to be prevented, from performing normal daily activities and obtaining full enjoyment of life and/or has incurred and will continue to incur expenses for psychological treatment, therapy, and counseling and, on information and belief has and/or will incur loss of income and/or loss of earning capacity.

44.     CHRISTOPHER H. did not discover that the act of childhood sexual abuse occurred and that his injury was caused by the childhood sexual abuse until years later, at the earliest in July of 2019.

## MILLER'S ABUSE OF JONATHAN M.

45.     In the fall of 1978 or spring of 1979, MILLER held a party at his home, attended by members of the theater stage crew, including JONATHAN M. ("JONATHAN M.").

46.     JONATHAN M. was male about 16 or 17 at the time of the party.

47.     JONATHAN M. stayed after to help clean up.

48.     After other party attendees left the home, MILLER made an unsolicited request to lay down with JONATHAN M.

49.     MILLER then forced his legs between JONATHAN M.'s legs and began touching JONATHAN M. in a sexually inappropriate manner.

50.     JONATHAN M. did not know how to respond. His reaction was to lie still.

51.     Similar encounters with MILLER occurred on several other occasions before JONATHAN M. graduated from LFHS.

52.     As a result of the foregoing, JONATHAN M. has suffered and continues to suffer injuries, including but not limited to, severe and permanent emotional distress, resulting in physical manifestations, embarrassment, loss of self-esteem, humiliation, physical, personal, and psychological injuries. JONATHAN M. was prevented and continues to be prevented, from performing normal daily activities and obtaining full enjoyment of life and/or has incurred and will continue to incur expenses for psychological treatment, therapy, and counseling and, on information and belief has and/or will incur loss of income and/or loss of earning capacity.

53.     JONATHAN M. did not discover that the act of childhood sexual abuse occurred and that his injury was caused by the childhood sexual abuse until years later, at the earliest in July of 2019.

## MILLER'S ABUSE JOHN DOE

54.     MILLER's abuse of JOHN DOE. ("DOE") occurred in the winter between 1980 and 1981.

55.     DOE was a male, 17 years old at the time of MILLER's abuse.

56.     MILLER became close to DOE during a time DOE was dealing with depression in part based on the deaths of a close friend and a family member.  MILLER used this knowledge to groom DOE for sexual abuse.

57.     MILLER would console DOE while at LFHS.

58.     MILLER then began inviting DOE and a group of people to MILLER's home, where MILLER offered the group, including DOE, rum and Coke drinks.

59.     One night it was just MILLER and DOE at MILLER's home.  MILLER offered DOE rum and Cokes to drink.

60.     MILLER requested DOE give MILLER a backrub claiming his low back to be hurt.

61.     After the backrub, MILLER and DOE drank and talked some more.

62.     As DOE was leaving, MILLER asked if he could give DOE a hug.  DOE allowed it, and MILLER gave DOE a long hug.  MILLER then took DOE's head in MILLER'S hands and tried to kiss DOE.   DOE pushed MILLER away. DOE got in his car and drove away crying.

63.     As a result of the foregoing, DOE has suffered and continues to suffer injuries, including but not limited to, severe and permanent emotional distress, resulting in physical manifestations, embarrassment, loss of self-esteem, humiliation, physical, personal, and psychological injuries. DOE was prevented and continues to be prevented, from performing normal daily activities and obtaining full enjoyment of life and/or has incurred and will continue to incur expenses for psychological treatment, therapy, and counseling and, on information and belief has and/or will incur loss of income and/or loss of earning capacity.

64.     DOE did not discover that the act of childhood sexual abuse occurred and that his injury was caused by the childhood sexual abuse until years later, at the earliest July 2019.

**MILLER'S ABUSE OF RICHARD WOLFGRAM**

65.     MILLER's abuse of RICHARD WOLFGRAM ("RICK W.") occurred between the fall of 1984 and spring of 1987.

66.     RICK W. was a male, between 14 years and 17 years old at the time of MILLER's abuse.

67.     RICK W. was a member of the theater Tech Crew and Telecom program supervised at LFHS by MILLER.

68.     At the time MILLER was RICK W.'s Tech Crew and Telecom supervisor at LFHS, RICK W. was experiencing emotional trauma from observing his father commit suicide by lighting himself on fire in front of the family home.  RICK W. started freshman year at high school two

weeks after his father passed away.

69.　　RICK W. joined Tech Crew in Studio 15 during his freshman year at LFHS. MILLER was the only adult who interacted with student Tech Crew members and was often the only adult around with the student Tech Crew at LFHS.

70.　　Once RICK W. joined Tech Crew, MILLER cultivated a friendship with RICK W. MILLER knew of the recent death of RICK W.'s father.　MILLER took the opportunity to be RICK W.'s adult guide through grief and loss, grooming him for sexual abuse.

71.　　During RICK W.'s freshman year, MILLER began giving RICK W. unsolicited hugs.　The first hugs occurred in one the LFHS theaters.　The first hugs were tight and occurred suddenly.　RICK W. did not tell MILLER to stop, because RICK W. did not want to disappoint MILLER or hurt MILLER's feelings.

72.　　Late in RICK W.'s freshman year, MILLER invited RICK W. to MILLER's house in Lake Bluff. MILLER was in the back of his house with his wife and baby.　MILLER provided RICK W. a glass of water or some other beverage and directed RICK W. into MILLER's basement.

73.　　The basement lighting was dim.　MILLER directed RICK W. to a bed in the basement and asked RICK W. if he would like a backrub.　RICK W. had never had a backrub and allowed MILLER to rub RICK's back.

74.　　MILLER directed RICK W. to lay on his stomach.　MILLER then straddled RICK W. and gave RICK W. a backrub until RICK fell asleep. When RICK W. woke up, he was disoriented and confused.　RICK left MILLER'S home and never returned.

75.　　During RICK W.'s sophomore year, MILLER provided RICK further opportunities at Tech Crew and began working for MILLER in Raymond Moore auditorium productions.

76.　　MILLER'S hugs continued during RICK W.'s sophomore year.　In addition to the

Studio 15 backstage, MILLER would ask RICK to speak privately. MILLER led RICK W. to either the equipment closet or the paint room. Both rooms were small, had no windows, one light, and one entry.

77.     Once the door was closed to these rooms, MILLER would give RICK W. a tight hug. The hugs progressed to MILLER pressing his entire body to RICK W., including MILLER's groin area to RICK W. During the hugs MILLER would press his forehead against RICK W. to get closer to RICK's face.

78.     RICK W. felt awkward during each of these occurrences. MILLER told RICK that he was MILLER's "special friend."

79.     During RICK W.'s junior year, RICK joined MILLER's Telecom program. Once in the Telecom program, MILLER would request RICK go to the audio editing room. The Telecom audio editing room was small with no windows and a single windowless door. MILLER continued to give RICK hugs in the Telecom audio editing room.

80.     The hugs then progressed to MILLER open mouth French kissing RICK W. during the hugs. MILLER open-mouth French kissed RICK W. on two occasions during RICK's junior year.

81.     Towards the end of junior year, RICK W. distanced himself from MILLER. The kisses and hugs stopped. MILLER told RICK that RICK did not want to be MILLER's "special friend" any longer.

82.     As a result of the foregoing, RICK W. has suffered and continues to suffer injuries, including but not limited to, severe and permanent emotional distress, resulting in physical manifestations, embarrassment, loss of self-esteem, humiliation, physical, personal, and psychological injuries. RICK W. was prevented and continues to be prevented, from performing

normal daily activities and obtaining full enjoyment of life and/or has incurred and will continue to incur expenses for psychological treatment, therapy, and counseling and, on information and belief has and/or will incur loss of income and/or loss of earning capacity.

83.     RICK W. did not discover that the act of childhood sexual abuse occurred and that his injury was caused by the childhood sexual abuse until years later, at the earliest July of 2019.

## MILLER'S ABUSE OF MICHAEL DE KONING

84.     MILLER's abuse of MICHAEL DE KONING ("MIKE D.") occurred between the fall of 1986 and spring of 1988.

85.     MIKE D. was a male, between 15 years and 17 years old at the time of MILLER's abuse.

86.     MILLER was MIKE D.'s teacher at LFHS.  MIKE D. was also part of the telecom program supervised at LFHS by MILLER.

87.     At the time MILLER was MIKE D.'s teacher a LFHS, MIKE D. was experiencing emotional and physical abuse at home.  MILLER was aware of MIKE D's experiences at home. MILLER used this knowledge to groom MIKE D. for sexual abuse.

88.     In the late winter of Mike D.'s junior year, MIKE D. was very upset by something after school.  MILLER saw MIKE D. and escorted MIKE D. into the telecom studio at LFHS.

89.     MILLER provided consoling words to MIKE D. MILLER then gave MIKE D. a brief hug.  MILLER then gave MIKE D. a second prolonged hug.  During the hug, MILLER was also pressing his full body to MIKE D.  During the hug, MILLER pressed his forehead to MIKE D.'s forehead.  At that point, MIKE D. could feel MILLER's erect penis as MILLER was pressing it onto MIKE D.  At the same time, MILLER attempted to open mouth kiss MIKE D.

90.     MIKE D. pushed MILLER away.  After a long, awkward silence, MIKE D. said

that he had to leave.

91.　As a result of the foregoing, MIKE D. has suffered and continues to suffer injuries, including but not limited to, severe and permanent emotional distress, resulting in physical manifestations, embarrassment, loss of self-esteem, humiliation, physical, personal, and psychological injuries. MIKE D. was prevented and continues to be prevented, from performing normal daily activities and obtaining full enjoyment of life and/or has incurred and will continue to incur expenses for psychological treatment, therapy, and counseling and, on information and belief has and/or will incur loss of income and/or loss of earning capacity.

92.　MIKE D. did not discover that the act of childhood sexual abuse occurred and that his injury was caused by the childhood sexual abuse until years later, no earlier than July of 2019.

**DISTRICT 115'S KNOWLEDGE OF<br>MILLER'S INAPPROPRIATE SEXUAL BEHAVIOR**

93.　 By the early 1980's, at the latest, MILLER's inappropriate sexual abuse of minor male students was reported to the principal of LFHS by a parent of a LFHS child, thereby providing LFHS and DISTRICT 115 actual knowledge of MILLER's inappropriate sexual abuse.

94.　During all of the above events, prior to 2009, when MILLER eventually resigned, DISTRICT 115, including teachers, administrators, and school board members, knew of MILLER's inappropriate sexual behavior with students.

95.　During all of the above events, prior to 2009, when MILLER eventually resigned, teachers, parents, village residents, and school administrators reported their concerns regarding MILLER's conduct to the Lake Forest School District. Among the concerns communicated to the Lake Forest School District were details regarding the above-referenced parties hosted by MILLER, as well as reports regarding MILLER's inappropriate overnight trips with students and activity of a sexual nature.

96.     In addition to the foregoing, DISTRICT 115 knew about widespread rumors that had been circulating for years throughout the school and community regarding MILLER's inappropriate sexual conduct with students.

## DISTRICT 115'S CONCEALMENT OF
## MILLER'S INAPPROPRIATE SEXUAL BEHAVIOR

97.     At all relevant times, the defendants DISTRICT 115 and LFHS turned a blind eye to MILLER'S inappropriate sexual conduct with students and chose not to document any of these complaints, intervene, investigate, or otherwise act in response to these complaints.

## FRAUDULENT MISREPRESENTATION
## AND NON-DISCLOSURE OF KNOWLEDGE

98.     On September 25, 2009, MILLER was allowed to quietly resign.

99.     As detailed above, the defendants DISTRICT 115 and LFHS knew about MILLER's conduct, intentionally and/or fraudulently concealed that knowledge from students and parents and at all times, held MILLER out to be an upstanding teacher by continuing to allow and encourage MILLER to have unfettered access to students both as a teacher and as the director of Tech Crew.

100.    The defendants DISTRICT 115 and LFHS had a duty to report, document, and warn students and their parents about MILLER'S conduct.

101.    Plaintiffs suppressed the memories of the abuse they suffered as minors until recently when they discovered that they had been suppressing the memories of their abuse, discovered their injuries, and became aware of their causes of action against defendants DISTRICT 115 and LFHS.

102.    Had defendants DISTRICT 115 and LFHS not misrepresented and concealed their knowledge of the danger that MILLER posed students, plaintiffs would have discovered this

information sooner,

103.    Because of defendants' DISTRICT 115 and LFHS misrepresentations and concealment, Plaintiffs were unaware of their claims against Defendants; did not know or suspect that Defendants had done anything wrong; and because of the misrepresentations and concealment, was otherwise not aware that the acts of Defendants has caused them to suffer injury.

## DETRIMENTAL RELIANCE

104.    Students and parents reasonably relied on defendants DISTRICT 115 and LFHS's representations about its teachers, including MILLER, in good faith and to their detriment.

105.    Had Plaintiffs or their parents been told what the defendants DISTRICT 115 and LFHS knew for years about MILLER, plaintiffs would not have been permitted to have contact with MILLER.

106.    Plaintiffs were prejudiced by their reliance on these representations and was prevented from discovering their sexual abuse and from bringing this lawsuit.

## EQUITABLE ESTOPPEL

107.    As described in greater detail above, defendants DISTRICT 115 and LFHS concealed material facts about MILLER and what they knew about MILLER's inappropriate sexual conduct with students.

108.    Defendants DISTRICT 115 and LFHS knew that by concealing their knowledge of MILLER's inappropriate and criminal conduct that it was misrepresenting to students and their parents about the safety of Lake Forest High School.

109.    At all relevant times, plaintiffs did not know that the representations made by defendants DISTRICT 115 and LFHS were not true.

110.    Defendants DISTRICT 115 and LFHS intended or reasonably expected the

representations to be relied upon or acted upon by Plaintiffs.

111.    Plaintiffs reasonably relied upon the representations of defendants DISTRICT 115 and LFHS in good faith and to their detriment.

112.    Plaintiffs have been prejudiced by their reliance on the representations of defendants DISTRICT 115 and LFHS and fraudulent representations described above when they were sexually abused and thereafter prevented from discovering the causes of the abuse they suffered, including Defendants' wrongful conduct.

113.    As a result of the foregoing, the defendants DISTRICT 115 and LFHS are estopped from relying on any statute of limitations that may have otherwise been implicated.

114.    Based on the foregoing, any statute of limitations defenses are likewise precluded pursuant to application of 735 ILCS 5/13-215.

## COUNT I – CHILDHOOD SEXUAL ABUSE

Plaintiffs hereby re-allege and incorporate all previous paragraphs as though fully set forth herein.

115.    MILLER knowingly touched or fondled plaintiffs, either directly or through clothing, for the purposes of sexual gratification or arousal.

116.    At the time MILLER touched or fondled plaintiffs, plaintiffs did not give MILLER consent.

117.    At the time MILLER touched or fondled plaintiffs, plaintiffs could not give consent, as plaintiffs were under the age of 18, the age difference between MILLER and plaintiffs was more than 5 years.

118.    MILLER's act of touching or fondling plaintiffs without consent constituted acts of childhood sexual abuse as defined by 735 ILCS 5/13-202.2.

119.     As a direct and proximate result of the forgoing, the plaintiffs suffered permanent injuries of a personal and pecuniary nature, and currently experiences mental anguish, humiliation and emotional and physical distress.

120.     Further, because of the aforementioned abuse and breach of trust, plaintiffs have suffered and will continue to suffer physical and emotional pain and distress.

WHEREFORE, Plaintiffs, prays for judgment against the Defendants, DAVID MILLER, LAKE FOREST COMMUNITY HIGH SCHOOL DISTRICT 115, and LAKE FOREST HIGH SCHOOL in an amount in excess of $50,000.00 plus attorney fees, interest, court costs and any other relief this Court deems equitable and just.

## COUNT II – BATTERY

Plaintiffs hereby re-allege and incorporate all previous paragraphs as though fully set forth herein.

121.     MILLER perpetrated an act of offensive contact with plaintiffs through unsolicited hugs, and/or kissing, and/or rubbing and/or oral sex.

122.     MILLER intended to cause the contact.

123.     Plaintiffs did not and/or could not consent to MILLER's offensive contact.

124.     As a direct and proximate result of the forgoing, the plaintiffs suffered permanent injuries of a personal and pecuniary nature, and currently experiences mental anguish, humiliation and emotional and physical distress.

125.     Further, as a result of the aforementioned abuse and breach of trust, plaintiffs have suffered and will continue to suffer physical and emotional pain and distress.

WHEREFORE, Plaintiffs, prays for judgment against the Defendants, DAVID MILLER, LAKE FOREST COMMUNITY HIGH SCHOOL DISTRICT 115, and LAKE FOREST HIGH

SCHOOL in an amount in excess of $50,000.00 plus attorney fees, interest, court costs and any other relief this Court deems equitable and just.

## COUNT III – WILLFUL AND WANTON MISCONDUCT

Plaintiffs hereby re-allege and incorporate all previous paragraphs as though fully set forth herein.

126. It was the duty of defendants, DISTRICT 115 and LFHS, by and through its authorized agents, servants, and/or employees, officers, and directors, to refrain from willful and wanton conduct or exhibiting a reckless or intentional disregard for the safety of others, including Plaintiffs, and to exercise the utmost care for the welfare and wellbeing of the minor students at Lake Forest High School. This duty included, but is not limited to the duty to supervise MILLER and his activities with students, including Plaintiffs, and the duty to report MILLER's abuse of children, including his abuse of plaintiffs, pursuant to the Abused and Neglected Child Reporting Act, 325 ILCS 5/1 et seq.

127. Defendants DISTRICT 115 and LFHS, by and through its authorized agent(s), servant(s), employee(s), officer(s) and/or director(s) breached this duty by committing one or more of the following reckless or intentional acts and/or omissions:

      a.     allowed MILLER to continue his position as a teacher and Tech Crew advisor with authority and autonomy despite the fact that it knew or should have known that MILLER was unfit for those positions and dangerous to students;

      b.     allowed MILLER to continue his employment despite complaints about inappropriate sexual contact with students;

      c.     failed to implement any restrictions to MILLER'S access to students;

      d.     provided MILLER with after-hours access to LFHS which allowed MILLER to abuse students on school grounds;

      e.     failed to intervene and prevent acts of sexual misconduct by MILLER;

f.   failed to warn students and parents, including Plaintiffs and his parents, that MILLER posed a danger to students;

g.   failed to investigate complaints about MILLER;

h.   failed to adequately supervise MILLER;

i.   failed to report MILLER'S acts of sexual misconduct or suspected sexual misconduct to authorities, pursuant to the Abused and Neglected Child Reporting Act, 325 ILCS 5/1 et seq;

j.   otherwise demonstrated deliberate or reckless disregard for plaintiffs' safety and wellbeing.

128.   As a direct and proximate result of one or more of the aforementioned willful and wanton acts and/or omissions Plaintiffs was subjected to sexual abuse and exploitation by MILLER, and was caused to suffer the above-referenced injuries as a result of the same.

WHEREFORE, Plaintiffs, prays for judgment against the Defendants, DAVID MILLER, LAKE FOREST COMMUNITY HIGH SCHOOL DISTRICT 115, and LAKE FOREST HIGH SCHOOL in an amount in excess of $50,000.00 plus attorney fees, interest, court costs and any other relief this Court deems equitable and just.

## COUNT IV – NEGLIGENCE

Plaintiffs hereby re-allege and incorporate all previous paragraphs as though fully set forth herein.

129.   Defendants DISTRICT 115 and LFHS, by and through its authorized agents, servants, and/or employees, officers, and directors, owed a duty to exercise reasonable care under the circumstances, to exercise the utmost care for welfare and wellbeing of the minor students of LFHS, and to refrain from careless and negligent conduct against the minor students, including Plaintiffs. This duty included, but is not limited to a duty to supervise MILLER in his activities with students and particularly Plaintiffs, and a duty to report MILLER's sexual conduct pursuant

to the Abused and Neglected Child Reporting Act, 325 ILCS 5/1 et seq.

130.     Notwithstanding this duty, defendants DISTRICT 115 and LFHS, by and through

its authorized agent(s), servant(s), employee(s), officer(s) and/or director(s) breached this duty by

committing one or more of the following careless and negligent acts and/or omissions in breach of

its duty of care:

a.     allowed MILLER to continue his position as a teacher and Tech Crew advisor with authority and autonomy despite the fact that it knew or should have known that MILLER was unfit for those positions and dangerous to students;

b.     allowed MILLER to continue his employment despite complaints about inappropriate sexual contact with students;

c.     failed to implement any restrictions to MILLER'S access to students;

d.     provided MILLER with after-hours access to Lake Forest High School which allowed MILLER to abuse students on school grounds;

e.     failed to intervene and prevent acts of sexual misconduct by MILLER;

f.     failed to warn students and parents, including Plaintiffs and his parents, that MILLER posed a danger to students;

g.     failed to investigate complaints about MILLER;

h.     failed to adequately supervise MILLER;

i.     failed to report MILLER'S acts of sexual misconduct or suspected sexual misconduct to authorities, pursuant to the Abused and Neglected Child Reporting Act, 325 ILCS 5/1 et seq;

j.     otherwise demonstrated deliberate or reckless disregard for Plaintiffs' safety and wellbeing.

131.     As a direct and proximate result of one or more of the aforementioned acts and/or

omissions, Plaintiffs was subjected to sexual abuse and exploitation by MILLER, and were caused

to suffer the above-referenced injuries as a result of the same.

WHEREFORE, Plaintiffs, prays for judgment against the Defendants, DAVID MILLER,

LAKE FOREST COMMUNITY HIGH SCHOOL DISTRICT 115, and LAKE FOREST HIGH SCHOOL in an amount in excess of $50,000.00 plus attorney fees, interest, court costs and any other relief this Court deems equitable and just.

## COUNT V – NEGLIGENT FAILURE TO FOLLOW
## ESTABLISHED POLICIES AND PROCEDURES

Plaintiffs hereby re-allege and incorporate all previous paragraphs as though fully set forth herein.

132. Upon information and belief, at all relevant times, defendants DISTRICT 115 and LFHS had certain policies and procedures in place to investigate concerns, allegations, or complaints regarding teacher conduct.

133. Defendants DISTRICT 115 and LFHS by and through its authorized agents, servants, and/or employees, officers, and directors, owed a duty to follow these policies and procedures and breached this duty in one or more of the following ways:

  a. allowed MILLER to continue his position as a teacher and Tech Crew Advisor with authority and autonomy despite the fact that it knew or should have known that MILLER was unfit for those positions and dangerous to students;

  b. allowed MILLER to continue his employment despite complaints about inappropriate sexual contact with students;

  c. failed to implement any restrictions to MILLER'S access to students;

  d. provided MILLER with after-hours access to Lake Forest High School which allowed MILLER to abuse students on school grounds;

  e. failed to intervene and prevent acts of sexual misconduct by MILLER;

  f. failed to warn students and parents, including Plaintiffs and his parents, that MILLER posed a danger to students;

  g. failed to investigate complaints about MILLER;
  h. failed to adequately supervise MILLER;

      i.      failed to report MILLER'S acts of sexual misconduct or suspected sexual misconduct to authorities, pursuant to the Abused and Neglected Child Reporting Act, 325 ILCS 5/1 et seq;

      j.      otherwise failing to follow its own established policies and procedures which were intended to protect students from abuse by teachers.

134.     As a direct and proximate result of one or more of the aforementioned acts and/or omissions, Plaintiffs and was caused to suffer the above-referenced injuries as a result of the same.

WHEREFORE, Plaintiffs, prays for judgment against the Defendants, DAVID MILLER, LAKE FOREST COMMUNITY HIGH SCHOOL DISTRICT 115, and LAKE FOREST HIGH SCHOOL in an amount in excess of $50,000.00 plus attorney fees, interest, court costs and any other relief this Court deems equitable and just.

## COUNT VI – BREACH OF FIDUCIARY DUTY

Plaintiffs hereby re-allege and incorporate all previous paragraphs as though fully set forth herein.

135.     Upon information and belief, at all relevant times, defendants, DISTRICT 115 and LFHS, through its written policies and procedures, as well as through its overt acts and omissions, fostered a special relationship between teachers and teacher-advisors and students at LFHS.

136.     In connection therewith, defendants, DISTRICT 115 and LFHS, by and through its agents, officers, directors, and school board members, held themselves out to be counselors, instructors, and authority figures to LFHS, including Plaintiffs.

137.     As a result, plaintiffs justifiably placed great trust and reliance on defendants DISTRICT 115 and LFHS and its teachers and extra-curricular advisors, including MILLER.

138.     Defendants DISTRICT 115 and LFHS maintained, fostered, and encouraged such relationships between its teachers and students, including the relationship between MILLER and Plaintiffs.

139.    For example, defendants DISTRICT 115 and LFHS fostered a unique relationship between MILLER and his students, including Plaintiffs, when the Lake Forest School District allowed MILLER to use school grounds after-hours to congregate with students.

140.    Defendants DISTRICT 115 and LFHS further fostered this unique relationship when it acquiesced to MILLER going on overnight trips with students.

141.    As a result of the foregoing, a fiduciary relationship between defendants DISTRICT 115 and LFHS and Plaintiffs was created.

142.    This fiduciary relationship established a duty, on the part of the defendants, DISTRICT 115 and LFHS, of good faith and fair dealing, and the duty to act with the best interests of its students, including Plaintiffs. This duty included the duty to warn, disclose, prevent and protect LFHS students, including Plaintiffs, from MILLER'S abuse.

143.    Defendants DISTRICT 115 and LFHS breached its fiduciary duty to Plaintiffs by engaging in and allowing the conduct described herein.

144.    As a direct and proximate result of defendants DISTRICT 115 and LFHS breach of its fiduciary duties, Plaintiffs has suffered and continued to suffer the above-referenced injuries and damages as described herein.

WHEREFORE, Plaintiffs, prays for judgment against the Defendants, DAVID MILLER, LAKE FOREST COMMUNITY HIGH SCHOOL DISTRICT 115, and LAKE FOREST HIGH SCHOOL in an amount in excess of $50,000.00 plus attorney fees, interest, court costs and any other relief this Court deems equitable and just.

### COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs hereby re-allege and incorporate all previous paragraphs as though fully set forth herein.

145.     As set forth in greater detail above, at all relevant times, defendants DISTRICT 115 and LFHS knew that MILLER was engaging in sexually inappropriate and/or criminal conduct with LFHS students, but nonetheless, chose to allow MILLER to continue his employment with unfettered access to students.

146.     Defendants DISTRICT 115 and LFHS conduct as alleged throughout this complaint was extreme and outrageous.

147.     As a direct and proximate result of defendants DISTRICT 115 and LFHS intentional acts or omissions, Plaintiffs have suffered and continued to suffer extreme physical and emotional distress, embarrassment, humiliation, psychological trauma and other injuries alleged herein.

WHEREFORE, Plaintiffs, prays for judgment against the Defendants, DAVID MILLER, LAKE FOREST COMMUNITY HIGH SCHOOL DISTRICT 115, and LAKE FOREST HIGH SCHOOL in an amount in excess of $50,000.00 plus attorney fees, interest, court costs and any other relief this Court deems equitable and just.

**COUNT VIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

Plaintiffs hereby re-allege and incorporate all previous paragraphs as though fully set forth herein.

148.     As set forth in greater detail above, at all relevant times, defendants DISTRICT 115 and LFHS knew or should have known that MILLER was engaging in sexually inappropriate and/or criminal conduct with LFHS students, but nonetheless, chose to allow MILLER to continue his employment with unfettered access to students.

149.     Defendants DISTRICT 115 and LFHS conduct as alleged throughout this complaint was negligent.

150.    As a direct and proximate result of defendants', DISTRICT 115 and LFHS, intentional acts or omissions, Plaintiffs have suffered and continued to suffer extreme physical and emotional distress, embarrassment, humiliation, psychological trauma and other injuries alleged herein.

WHEREFORE, Plaintiffs, prays for judgment against the Defendants, DAVID MILLER, LAKE FOREST COMMUNITY HIGH SCHOOL DISTRICT 115, and LAKE FOREST HIGH SCHOOL in an amount in excess of $50,000.00 plus attorney fees, interest, court costs and any other relief this Court deems equitable and just.

### COUNT IX - FAILURE TO SUPERVISE

Plaintiffs hereby re-allege and incorporate all previous paragraphs as though fully set forth herein.

151.    Defendants DISTRICT 115 and LFHS, through its school board members, administrators, teachers, employees and agents, was aware of MILLER's propensity to commit acts of sexual harassment and abuse or misconduct against male minor students, making MILLER'S future misconduct and the harm likely to result from such conduct reasonably foreseeable.

152.    Defendants DISTRICT 115 and LFHS knew MILLER was utilizing his employment and his access to school and male students to engage in predatory behavior including sexual grooming, sexual harassment and sexual abuse against minor male students.

153.    At all relevant times herein, plaintiffs were under the direct and immediate control of MILLER as an employee of defendants DISTRICT 115 and LFHS.

154.    Defendants DISTRICT 115 and LFHS had a duty to act in a reasonably prudent manner in the supervision of its teachers, counselors and administrators, including MILLER, and

to ensure that MILLER and other employees acted in the best interest of the health, safety and welfare of children attending their school.

155.     Defendants DISTRICT 115 and LFHS, by and through its agents and/or employees acted with a reckless and conscious disregard for the safety and welfare of minor male students, and breached its duties owed to Plaintiffs by committing one or more of the following acts or omissions:

   a.     allowed an environment wherein MILLER could utilize school property, during and after school hours, without supervision of his activities, and engage in the sexual abuse of plaintiffs;

   b.     failed to protect plaintiffs despite its prior knowledge that MILLER was involved in sexual grooming, sexual harassment and sexual abuse of other female students;

   c.     failed to document complaints received against MILLER in accordance with DISTRICT 115 policies;

   d.     failed to warn and/or disclose to students of the DISTRICT 115 complaints received against MILLER.

   e.     withheld information from minor students, including plaintiffs and their parents or guardians concerning prior complaints of sexual harassment and sexual abuse perpetrated on minor female students by MILLER;

   f.     failed to warn and/or disclose to individual minor students of the DISTRICT 115, including plaintiffs, of the complaints received against MILLER.

156.     As a result of the defendants' DISTRICT 115 and LFHS aforementioned breach, defendants DISTRICT 115 and LFHS proximately caused injury to plaintiffs.

WHEREFORE, Plaintiffs, prays for judgment against the Defendants, DAVID MILLER, LAKE FOREST COMMUNITY HIGH SCHOOL DISTRICT 115, and LAKE FOREST HIGH SCHOOL in an amount in excess of $50,000.00 plus attorney fees, interest, court costs and any other relief this Court deems equitable and just.

**COUNT X – NEGLIGENT RETENTION**

Plaintiffs hereby re-allege and incorporate all previous paragraphs as though fully set forth herein.

157.     While MILLER was an employee, defendants DISTRICT 115 and LFHS through its agents, were aware of numerous complaints made against Defendant MILLER relating to his inappropriate conduct involving male students.

158.     The violent and sexually dangerous propensities of MILLER made MILLER unfit for the job and created a foreseeable danger to others.

159.     The unfitness of Defendant MILLER was a proximate cause of plaintiffs' injuries.

160.     The conduct of defendants DISTRICT 115 and LFHS in intentionally hiring and retaining Defendant Miller was willful and wanton as it was in reckless disregard for the safety of its students.

WHEREFORE, Plaintiffs, prays for judgment against the Defendants, DAVID MILLER, LAKE FOREST COMMUNITY HIGH SCHOOL DISTRICT 115, and LAKE FOREST HIGH SCHOOL in an amount in excess of $50,000.00 plus attorney fees, interest, court costs and any other relief this Court deems equitable and just.

### COUNT XI – TITLE IX DISCRIMINATION (20 U.S.C. § 1681, et. Seq.)

Plaintiffs hereby re-allege and incorporate all previous paragraphs as though fully set forth herein.

161.     Title IX provides that "No person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, ..." 20 U.S.C. § 1681(a).

162.     At all relevant times, defendants DISTRICT 115 and LFHS were educational institutions that provided public-school education and receive federal financial assistance.

163. Plaintiffs belong to protected group under Title IX.

164. MILLER subjected plaintiffs to acts of sexual harassment and/or sexual abuse, including unwelcome touching of a sexual nature, unwelcome sexual advances, and unwelcome comments of a sexual nature.

165. The sexual harassment and/or sexual abuse to which MILLER subjected plaintiffs was based on the sex of the plaintiffs.

166. At all relevant times, defendants DISTRICT 115 and LFHS possessed actual notice that it could be liable under Title IX for teacher, counselor, administrator-on-student sexual harassment, sexual grooming, sexual discrimination and sexual abuse.

167. Based on prior reports of abuse, dating as far back as 1970's and continuing through abuse in 2009, defendants DISTRICT 115 and LFHS, by and through its school board members, administrators, employees and agents, possessed actual knowledge of MILLER's alleged sexual misconduct, including sexual harassment, sexual discrimination and sexual abuse of minor students.

168. MILLER's acts of sexual harassment and/or sexual abuse were so severe, pervasive, and objectively offensive that it deprived the plaintiffs of access to the educational opportunities or benefits provided by defendants DISTRICT 115 and LFHS.

169. Defendants DISTRICT 115 and LFHS possessed decision-making authority concerning the procedures and actions taken upon reports of sexual abuse, sexual harassment and sexual grooming.

170. Defendants DISTRICT 115 and LFHS had a duty based on Title IX to investigate reports of sexual abuse, sexual harassment, and sexual violence.

171. That despite multiple reports of MILLER's misconduct, defendants DISTRICT 115

and LFHS, by and through its school board members, administrators, employees and agents, failed to take appropriate corrective action, thereby acting with deliberate indifference to the rights and safety in one or more the following ways:

      a.      failed to investigate reports of MILLER's misconduct;

      b.      ignored and/or minimized reports of MILLER's sexual misconduct, including sexual harassment and sexual abuse, despite an ongoing danger to minor students within the Lake Forest School District;

      c.      withheld and/or failed to properly document complaints received concerning MILLER's sexual misconduct;

      d.      failed to communicate any precautions, directives or educational materials that might be utilized between parent and child to identify whether or not inappropriate conduct occurred between any students/child and any other adult, whether generally or specifically in relations to MILLER; and

      e.      failed to otherwise institute corrective action designed to reduce the risk of harm and foreseeable acts of sexual harassment and sexual abuse perpetrated against minor students, including plaintiffs.

172.    Title IX, 20 U.S.C. § 1681 et. Seq., Required defendants DISTRICT 115 and LFHS to provide educational opportunity on an equal basis to all students regardless of their sex.

173.    20 U.S.C. § 1981 affords plaintiffs a civil cause of action for damages and for appropriate injunctive relief against the BOE. 42 U.S.C. § 1988 identifies damages, court costs, litigation expenses and attorney fees is within the remedies available in an action brought are similar to 20 U.S.C. § 1981.

174.    That as a direct and/or proximate result of the conduct of defendants DISTRICT 115 and LFHS as described above, plaintiffs suffered sexual harassment, sexual abuse, and have sustained emotional distress as a result thereof and will continue to experience emotional distress in the future.

WHEREFORE, the Plaintiffs prays for judgment against all Defendants, jointly and

severally, for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs.

## COUNT XII – DUE PROCESS/STATE-CREATED DANGER

175.    Plaintiffs hereby incorporate all previous paragraphs and though fully set forth herein.

176.    At all times, plaintiffs had the constitutional right, through the Fourteenth Amendment's guarantee of due process, to be free of state-occasioned damage to a person's bodily integrity, including childhood sexual abuse.

177.    Defendants DISTRICT 115 and LFHS actively placed MILLER in charge of the Theater, Tech Crew, and Telecom programs, where defendants knew MILLER had unfettered and unsupervised access to minor, male schoolchildren.

178.    Defendants DISTRICT 115 and LFHS actively celebrated MILLER's achievements while in charge of the Theater, Tech Crew, and Telecom programs.

179.    Defendants DISTRICT 115 and LFHS actions required deliberation and the defendants had time to make unhurried judgements and actions.

180.    Defendants DISTRICT 115 and LFHS affirmative action, placing MILLER in charge of the Theater, Tech Crew, and Telecom programs, foreseeably and directly resulted in harm to plaintiffs.

181.    DISTRICT 115 and LFHS' action of placing MILLER in charge of the Theater, Tech Crew, and Telecom programs was the but for cause of the dangers faced by plaintiffs.

182.    DISTRICT 115 and LFHS' acted with deliberate indifference to foreseeable injuries to plaintiffs by placing MILLER in charge of the Theater, Tech Crew, and Telecom programs.

183.    Defendants DISTRICT 115 and LFHS awareness of the risk to plaintiffs rose to the level of actual knowledge or was sufficiently concrete to put defendants on notice of the harm.

184.    Defendants DISTRICT 115 and LFHS affirmative action, placing MILLER in charge of the Theater, Tech Crew, and Telecom programs, was directly connected to the harm suffered by plaintiffs.

185.    Defendants DISTRICT 115 and LFHS has a relationship with plaintiffs such that the plaintiffs were foreseeable victims of the defendants' actions.

186.    Defendants DISTRICT 115 and LFHS, state actor MILLER, affirmatively used his or her authority in a way that created a danger to the plaintiffs or that rendered the plaintiffs more vulnerable to danger than had the state not acted at all.

187.    As a direct and proximate result of defendants' affirmative actions, plaintiffs' constitutional rights as guaranteed by the due process clause of the Fourteenth Amendment, were violated and plaintiffs sustained physical injuries, suffered severe emotional distress and humiliation.

WHEREFORE, the Plaintiffs pray for judgment against all Defendants, jointly and severally, for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs.

## COUNT XIII – SECTION 1983 VIOLATION OF CONSTITUTIONAL RIGHTS
### (MONELL DOCTRINE)

188.    Plaintiffs hereby re-allege and incorporate all previous paragraphs as though fully set forth herein.

189.    Claims based on Section 1983 for violations of constitutional rights may be brought concurrently with claims based on Title IX.  Fitzgerald v. Barnstable School Committee, 555 U.S. 246 (2009).

190.    At all times DISTRICT 115 and LFHS were municipal agencies and the standards annunciated in <u>Monell v. N.Y. Dep't of Soc, Servs.</u> apply to these defendants.

191.    At all times, plaintiffs had the constitutional right, through the Fourteenth Amendment's guarantee of due process, to be free of state-occasioned damage to a person's bodily integrity, including childhood sexual abuse.

192.    At all times, defendants DISTRICT 115 and LFHS had policies, de facto practices, and customs in place to withhold from the community allegations of sexual misconduct by their agents and employees.

193.    At all times, defendants DISTRICT 115 and LFHS had policies, de facto practices, and customs in place to not fully investigate allegations of sexual misconduct by their agents and employees.

194.    At all times, defendants DISTRICT 115 and LFHS had policies, de facto practices, and customs in place to not remove agents and employees accused of sexual misconduct from the premises and away from children.

195.    At all times policymakers for DISTRICT 115 and LFHS were deliberately indifferent to the known risk that the above policies, de facto policies, and customs would lead to constitutional violations.

196.    The above policies, de facto policies, and customs of DISTRICT 115 and LFHS were the proximate cause to the violations plaintiffs' constitutional rights as guaranteed by the due process clause of the Fourteenth Amendment.

197.    The above policies, de facto policies, and customs of DISTRICT 115 and LFHS were the moving force behind the violations plaintiffs' constitutional rights as guaranteed by the due process clause of the Fourteenth Amendment.

WHEREFORE, pursuant to <u>Monell v. N.Y. Dep't of Soc, Servs.</u>, 436 U.S. 658 (1978), Plaintiffs demand judgment against Defendants, LAKE FOREST COMMUNITY HIGH SCHOOL DISTRICT 115, and LAKE FOREST HIGH SCHOOL, for an award of reasonable compensatory damages, plus attorney's fees and costs and any other addition relief this Court deems equitable and just.

### JURY DEMAND

Now Comes the Plaintiffs, and each of them, by and through their attorneys, Goldberg & Goldberg, and demands a trial by jury.

GOLDBERG & GOLDBERG

By:___/s/ Ian R. Alexander_____

Ian R. Alexander (Il Bar # 6228738)
Joseph M. Preiser (Il Bar # 6300587)
GOLDBERG & GOLDBERG
33 North Dearborn Street, Suite 1930
Chicago, IL 60602
(312) 368-0255
ira@bgoldberglaw.com
josephp@bgoldberglaw.com