### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| RICHARD WOLFGRAM *et al.*, | |
| Plaintiffs, | No. 21-cv-02755 |
| v. | Judge John F. Kness |
| DAVID MILLER *et al.*, | |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs, students at Lake Forest Community High School District 115 ("the District") in the 1970s and 1980s, allege that their former teacher, David Miller, sexually abused them and other male students for over 35 years. Plaintiffs allege that the District knew about the abuse and intentionally concealed reports about the sexual misconduct. Plaintiffs bring claims against the District and Miller for childhood sexual abuse, battery, willful and wanton misconduct, negligence, negligent failure to follow procedures, breach of fiduciary duty, intentional and negligent infliction of emotional distress, failure to supervise, negligent retention, Title IX discrimination, and violations of substantive due process directly and under *Monell*.

The District moved to dismiss the Complaint, which Miller adopts, raising, among other things, a statute of limitations challenge. As explained below, although some of Plaintiffs' claims are barred under a statute of repose, Plaintiffs have stated

a claim under the fraudulent concealment statute and the equitable tolling doctrine sufficient to clear the relatively low bar of a motion to dismiss. Plaintiffs' claims are not clearly barred by the Illinois Tort Immunity Act or the Illinois School Code. Moreover, Defendants are sufficiently put on notice of each of the challenged claims against them set forth in the Complaint. Accordingly, Defendants' motions to dismiss is, in the main, denied.

## I. BACKGROUND

Plaintiffs Richard Wolfgram, John M., Christopher Holvenstot, John Doe, Michael de Koning, and Jonathan M. were students at Lake Forest Community High School District 115 (the "District") in the 1970s and 1980s. (Dkt. 1 ("Compl.") ¶¶ 1, 7.) Defendant David Miller worked at the District as both a teacher and an advisor to the Tech Crew in the Theater Department. (*Id.*) Plaintiffs allege that Miller used his position as a teacher and an advisor at the District to abuse Plaintiffs and other male students on school property, at school-sanctioned trips, and at his house for over 35 years until his resignation in 2009. (*Id.* ¶¶ 10–20.) Plaintiffs also allege that the District was aware of, ignored, and intentionally concealed the reports about Miller's inappropriate sexual conduct, while upholding Miller as an "upstanding teacher." (*Id.* ¶¶ 21, 98–99.)

According to the Complaint, Miller's sexual abuse "was reported to the principal of [the District] by a parent," by "the early 1980's." (*Id.* ¶ 93.) The District heard from "teachers, parents, village residents, and school administrators [who] reported their concerns regarding Miller's conduct to [the District]." (*Id.* ¶ 95.) The

District also "knew about widespread rumors that had been circulating for years throughout the school" about Miller's conduct but "turned a blind eye" by choosing not to "document any of these complaints, intervene, investigate, or otherwise act in response to these complaints." (*Id.* ¶¶ 96–97.) During this time, the District continued to hold Miller out "to be an upstanding teacher" by allowing Miller "unfettered access to students both as a teacher and as the director of Tech Crew." (*Id.* ¶¶ 99, 155.) Finally, the District allowed Miller to "quietly resign" in September 2009. (*Id.* ¶ 98.)

How old each Plaintiff was at the time of the abuse and when Miller allegedly abused each Plaintiff is stated in the Complaint:

- Plaintiff John M. alleges that he was abused "[i]n the fall of 1976 or spring of 1977" when he was "about 13 or 14" years old and attended a party at Miller's home (*Id.* ¶¶ 22–23);

- Plaintiff Christopher Holvenstot alleges that he was abused "between the fall of 1977 and spring of 1979" when he was "between 15 and 17 years old" at Miller's home, on a trip to Mexico, and while canoeing on Lake Michigan with Miller (*Id.* ¶¶ 31–41);

- Plaintiff Jonathan M. alleges that he was abused "[i]n the fall of 1978 or spring of 1979" when he was "about 16 or 17" years old and attended a party at Miller's home (*Id.* ¶¶ 45–51);

- Plaintiff John Doe alleges that he was abused "in the winter between 1980 and 1981" when he was "17 years old" and Miller hugged and kissed him at Miller's home (*Id.* ¶¶ 54–62);

- Plaintiff Richard Wolfgram alleges that he was abused "between the fall of 1984 and spring of 1987" when he was "between 14 years and 17 years old" (*Id.* ¶¶ 65–81);

- Plaintiff Michael de Koning alleges that he was abused "between the fall of 1986 and spring of 1988" when he was "between 15 years and 17 years old" (*Id.* ¶¶ 84–89.)

Because of the District's "misrepresentations and concealment," Plaintiffs did

not "know or suspect that Defendants had done anything wrong." (*Id.* ¶ 103.) Until July 2019 "at the earliest," Plaintiffs "suppressed the memories of the abuse they suffered as minors." (*Id.* ¶¶ 30, 44, 53, 64, 83, 92, 101.) Once Plaintiffs "discovered that they had been suppressing the memories of their abuse, [they] discovered their injuries, and became aware of their causes of action against [D]efendants." (*Id.* ¶ 101.)

Plaintiffs bring thirteen accounts against Defendants: childhood sexual abuse (Count I), battery (Count II), willful and wanton misconduct (Count III), negligence (Count IV), negligent failure to follow procedures (Count V), breach of fiduciary duty (Count VI), intentional infliction of emotional distress (Count VII), negligent infliction of emotional distress (Count VIII), failure to supervise (Count IX), negligent retention (Count X), Title IX discrimination (Count XI), and substantive due process violations, both directly (Count XII) and under *Monell* (Count XIII). The District[1] moved to dismiss the Complaint, (Dkt. 15) and Miller filed a blanket motion to dismiss "adopt[ing] all of Argument I" raised by the District's motion. (Dkt. 17.) Because Miller's motion only adopts the District's motion, which has been fully briefed, both motions are considered fully briefed and are now before the Court for resolution.

---

[1] Plaintiffs name "Lake Forest Community High School District 115" and "Lake Forest High School" as two separate entities throughout the Complaint. (*See generally* Compl.) Under the Illinois School Code, however, the Board of Education is the appropriate legal entity to be sued in these circumstances. 105 ILCS 5/10-2; *see Bd. of Educ. of Bremen High Sch. Dist. No. 228 v. Mitchell*, 899 N.E.2d 1160, 1166 (Ill. App. Ct. 2008). Accordingly, absent any objection from Plaintiffs, the Board of Education of Lake Forest High School District 115 moves to dismiss on behalf of Lake Forest Community High School.

## II.     LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted). As the Seventh Circuit has explained, this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw all reasonable inferences in the plaintiff's favor. *Id.* at 678; *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Accordingly, a complaint states a claim " 'whether or not some defense is potentially available.' " *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) (quoting *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2003)). A plaintiff need not, and should not, attempt to plead around affirmative defenses. *Gomez v. Toledo*, 446 U.S. 635, 640–41 (1980) (holding that defendant bears the burden of pleading defenses); *Davis v. Ind. State Police*, 541 F.3d

760, 763–64 (7th Cir. 2008) ("[T]he Justices did not revise the allocation of burdens concerning affirmative defenses; neither *Erickson* nor *Bell Atlantic* mentions affirmative defenses in general or *Gomez* in particular."). Dismissal under Rule 12(b)(6) based on the statute of limitations is "irregular" in the Seventh Circuit because it is an affirmative defense for which the defendant bears the burden of proof. *N. Trust Co.*, 372 F.3d at 888. Unless a litigant pleads itself out of court by alleging (and thus admitting) the ingredients of a defense, dismissal under 12(b)(6) is improper. *See U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003).

## III. DISCUSSION

The District moves to dismiss the Complaint on the grounds that each of Plaintiff's claims are untimely, barred by the Illinois Tort Immunity Act and Illinois School Code, and fail to state valid causes of action. As explained more fully below, although some of Plaintiffs' claims may ultimately be barred under a statute of repose, all Plaintiffs have sufficiently stated a claim under the fraudulent concealment statute and the equitable tolling doctrine to survive a motion to dismiss. Additionally, Plaintiffs' claims are not clearly barred by the Illinois Tort Immunity Act or the Illinois School Code. Finally, the Complaint sufficiently puts Defendants on notice of each of the challenged claims against them.

### A. Statute of Limitations

The District contends that the applicable statute of limitations is the version of the two-year personal injury statute of limitations that was in effect at the time of Plaintiffs' abuse from 1976 and 1988. *See* 735 ILCS 5/13-202. Because all Plaintiffs

were minors at the time of the abuse, the District argues that Plaintiffs had until two years after they turned 18 years old to file this action under 735 ILCS 5/13-211. Accordingly, the District argues that Plaintiffs' action has been time-barred since each Plaintiffs' twentieth birthday, which was before Illinois's specific statute of limitations for claims "based on childhood sexual abuse" went into effect. *See* 735 ILCS 5/13-202.2; *see also* (Dkt. 16 at 2–5.)

Plaintiffs do not dispute that their claims would be time-barred under the general two-year statute of limitations for personal injury claims. (*See* Dkt. 21 at 3.) Nor do Plaintiffs dispute that the specific statute of limitations for claims based on child sexual abuse does not apply. (*See id.*) Instead, Plaintiffs rely on a number of legal theories to establish that Defendants, by their conduct, prevented Plaintiffs from bringing their claims sooner. (*See id.* at 3–7.) Plaintiffs assert that such conduct raises the discovery rule, fraudulent concealment, and equitable estoppel. (*Id.*) Each argument is reviewed in turn.

### 1. Discovery Rule

Because the discovery rule is a rule of accrual, the Court must first determine which specific statute governs Plaintiffs' claims. *See Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1137 (Ill. 1995) ("The discovery rule delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he was been injured and that his injury was wrongfully caused."). This analysis is more nuanced than the parties' briefing suggests. Neither side explains why "the statute of limitations [for personal injury claims] ran before

1991," thereby rendering inapplicable the childhood sexual abuse limitations period under 735 ILCS 13-202.2 that went into effect "at least one year after the limitations period [for personal injury claims] ran." (Dkt. 16 at 2–3.) Nor does either party address the effect of a statute of repose on Plaintiffs' claims. To determine the relevant statute of limitations, therefore, the Court is required to follow the command of *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), discern how the Illinois Supreme Court would treat the claims, and then follow that course.

As Defendant points out, in *M.E.H. v. L.H.*, the Illinois Supreme Court held that "once a statute of limitations expired, the defendant has a vested right to invoke the bar of the limitations period as a defense to a cause of action. That right cannot be taken away by the legislature without offending the due process protections of our state's constitution." 685 N.E.2d 335, 339 (Ill. 1997). Illinois's childhood sexual abuse law, cited in each of the party's briefs, historically provided that "in no event may an action for personal injury based on childhood sexual abuse be commenced more than 12 years after the date on which the person abused attains the age of 18 years." 735 ILCS § 5/13-202.2(b) (1992) (effective July 1, 1991, repealed January 1, 1994). This mandate meant that "any claims for personal injury based on childhood sexual abuse had to be brought by the plaintiff's thirtieth birthday, and as a statute of repose it operated to bar actions regardless of whether the plaintiff had discovered the injury." *Anderson v. Catholic Bishop of Chi.*, 759 F.3d 645, 648 (7th Cir. 2014) (and collecting cases). Although the "statute of repose was not in effect when the [alleged] abuse occurred and was repealed before the action was filed[,]" if Plaintiffs' claims were

time-barred under the old law, they remained time-barred even after . . . the legislature ha[d] subsequently changed its position." *M.E.H.*, 685 N.E.2d at 338, 341.

Plaintiffs allege that Miller's abuse took place at various times between 1976 and 1988, and that the District knew about and concealed this abuse. Reviewing the ages and dates from the Complaint, the Court has determined the date on which each Plaintiff turned thirty years old. According to the Complaint:

- Plaintiff John M. turned thirty sometime in **1993** (abused in 1976 or 1977 when he was 13 or 14 years old);

- Plaintiffs Holvenstot and Jonathan M. turned thirty sometime in **1992** (Holvenstot abused in 1977 and in 1979 when he was 15 and 17 years old; Jonathan M. abused in 1978 or 1979 when he was 16 or 17 years old);

- Plaintiff John Doe turned thirty sometime in **1994** (abused between 1980 and 1981 when he was 17 years old);

- Plaintiff Wolfgram turned thirty sometime in **2000** (abused between 1984 and 1987 when he was between 14 and 17 years old);

- Plaintiff de Koning turned thirty sometime in **2001** (abused between 1986 and 1988 when he was between 15 and 17 years old).

(*See* Compl. ¶¶ 22–23, 31–41, 45–51, 54–62, 65–81, 85–89.)

These dates, undisputed in the context of Defendants' motions to dismiss, dictate whether the now-repealed statute of repose governing childhood sexual abuse claims applied to Plaintiffs' claims. Under Illinois law, "the limitations period 'governing a claim is determined by the nature of the party's injury rather than the nature of the facts from which the claims arises.' " *Anderson*, 759 F.3d at 647 (quoting *Doe A. v. Diocese of Dallas*, 917 N.E.2d 475, 487 (Ill. 2009)). Although the statute of repose was repealed effective January 1, 1994, "the repeal does not avoid the impact

9

of the statute of repose" as to those Plaintiffs whose claims "were extinguished prior to the repeal." *Anderson*, 759 F.3d at 648 (citing *M.E.H.*, 685 N.E.2d at 339). Based on the Court's calculation, therefore, Plaintiffs John M., Holvenstot, and Jonathan M. turned thirty years old in 1993, 1992, and 1992 respectively—before the statute of repose was repealed. Those Plaintiffs' claims are subject to the statute of repose.

It is well-established that "[w]here the legislature shortens the time for bringing suit, the courts will not apply the new legislation in a way that will instantaneously extinguish a cause of action that existed before the legislation took effect." *M.E.H.*, 685 N.E.2d at 340. Instead, "Plaintiffs must proceed within a reasonable time following the effective date of the statute of repose" or risk their actions be barred "even if they have not yet discovered that they have a claim." *Id.* Although the determination of reasonableness turns on the particular facts and circumstances of each case, the Illinois Supreme Court has held that "to allow a period of time greater than the repose itself would defeat the purpose of the statute." *Id.*

Plaintiffs do not argue that this action—brought in 2021, almost 30 years after the statute of repose's effective date—meets that reasonableness standard. *See Id.* at 340–41 (holding that the nearly 4-year delay was not reasonable). Consequently, "regardless of whether the plaintiff[s] had discovered the[ir] injury," Plaintiffs John M., Holvenstot, and Jonathan M.'s claims were barred once they reached the age of thirty or so because each turned thirty before the statute of repose was repealed and

failed to assert their claims "within a reasonable time after that effective date."[2] *Anderson*, 759 F.3d at 648; *see also M.E.H.*, 685 N.E.2d at 340–41 (finding the statute of repose applied to plaintiffs where they delayed filing their complaint for two years after discovering the abuse, leading to plaintiffs' complaint being filed 3 years and 10 months after the twelve-year repose period had taken effect); *Doe v. Boy Scouts of Am.*, 66 N.E.3d 433 (Ill. App. Ct. 2016) (finding the statute of repose applied to plaintiff's claims despite neither party making the argument).

Determining the "relevant statute of limitations" period the discovery rule would accrue is the next task for the Court. *See Hermitage Corp.*, 651 N.E.2d at 1137. Before January 1, 1991, claims for personal injury resulting from childhood sexual abuse were governed by the two-year limitations period. 735 ILCS 5/13-202 (2016); *Clay v. Kuhl*, 727 N.E.2d 217, 220–21 (Ill. 2000). On January 1, 1991, the Illinois legislature adopted chapter 13-202.2 ("childhood sexual abuse" law) of the Code (P.A. 86-1346 (eff. Jan. 1, 1991)), which codified the common-law discovery rule for actions involving childhood sexual abuse. 735 ILCS 5/13-202.2(b) (1992) (making clear that the two-year limitations period does not begin to run until the victim "discovers or through the use of reasonable diligence should discover" that the abuse occurred and that the abuse caused the personal injury).

Based on the Court's calculation,[3] by the time Illinois's "childhood sexual

---

[2] Plaintiffs John Doe, Wolfgram, and de Koning claims, however, are not extinguished because they turned thirty sometime in 1994, 2000, and 2001 respectively—after the statute of repose was repealed.

[3] The Court calculated the date on which Plaintiffs John Doe, Wolfgram, and de Koning's claims accrued by adding two years to the date on which each Plaintiff attained majority. *See* 735 ILCS 5/13-211 (West 1988). According to the Complaint, Plaintiff John Doe's claim

abuse" law came into effect in 1991, Plaintiffs Wolfgram and John Doe's claims would have already been time-barred, absent any other accrual or tolling, under the general limitations period for personal injury claims. *See* 735 ILCS 5/13-202.2(e) (1992) ("This Section applies to actions pending on the effective date of this amendatory Act of 1990 as well as to actions commenced on or after that date."). Plaintiff de Koning's claims, however, would have expired after January 1, 1991, absent any other accrual or tolling, and therefore made the cutoff date for section 13-202.2(b) to apply. Because the discovery rule applies to both the two-year personal injury limitations period by way of common law and the two-year period governing childhood sexual abuse claims by way of statutory law, the Court may turn to the application of the discovery rule no matter which of the two is the "relevant statute of limitations." *See Hermitage Corp.*, 651 N.E.2d at 1137.

Under the discovery rule, a cause of action accrues "when the party knows or reasonably should know of an injury and that injury was wrongfully caused." *Clay*, 727 N.E.2d at 220. Limitations period commences even if the plaintiff does not know that the misconduct was actionable. *Parks v. Kownacki*, 737 N.E.2d 287, 294 (Ill. 2000). Whether the discovery rule applies is generally a question of fact, but "may be determined as a matter of law when the answer is clear from the pleadings." *Clay*, 727 N.E.2d at 221.

---

accrued in **1982** (abused between 1980 and 1981 when he was 17 years old); Plaintiff Wolfgram's claim accrued in **1988** (abused between 1984 and 1987 when he was between 14 and 17 years old); Plaintiff de Koning's claim accrued in **1989** (abused between 1986 and 1988 when he was between 15 and 17 years old). (*See* Compl. ¶¶ 22–23, 31–41, 45–51, 54–62, 65–81, 85–89.) Because Plaintiff de Koning turned 18 years old sometime in 1989, he turned 20 years old sometime in 1991.

The District relies heavily on two Illinois Supreme Court cases that rejected the application of the discovery rule in childhood sexual abuse cases: *Clay v. Kuhl* and *Parks v. Kownacki*. Both *Clay* and *Parks* stand for the proposition that the discovery rule does not toll the statute of limitations if the plaintiff is aware of the abuse when it occurred. *Clay*, 727 N.E.2d at 221–23; *Parks*, 737 N.E.2d at 294–95.

In *Clay*, the Illinois Supreme Court determined that, because the plaintiff was "always aware of the misconduct charged," did "not argue that she repressed her memories of the abuse," and postponed filing her complaint until 13 years after she reached the age of majority, her complaint was time-barred as a matter of law. *Clay*, 727 N.E.2d at 222. There, the plaintiff, born in 1964, admitted knowing of the abuse when it occurred in the 1970s, but stated that she did not realize that her "sexual encounters" with the defendant had caused her psychological injuries until 1994. *Id.* Relying on the discovery rule to save her otherwise untimely complaint, the plaintiff filed suit in 1996. *Id.* Rejecting the discovery rule and reiterating the well-established rule, the court held that "[t]here is no requirement that a plaintiff must know the full extent of his or her injuries before suit must be brought under the statute of limitations." *Id.* Plaintiff's awareness of the abuse amounted to her knowing she was injured because "Illinois law presumes an intent to harm and a resulting injury from [sexual abuse of another, especially a minor]." *Id.* (collecting cases).

Likewise in *Parks*, the plaintiff alleged that, while she had not repressed memories of the abuse by her priest, she did not connect her post-traumatic stress disorder diagnosis with that abuse until over 20 years after the abuse. *Parks*, 737

13

N.E.2d at 294–95. And the plaintiff alleged that when the abuse was occurring, she did not know that the sexual relationship between her and her priest was wrong. *Id.* In rejecting the applicable discovery rule, the court, citing *Clay*, held that the "plaintiff was aware of both the cause and some injury." *Id.* at 295. Because, despite her allegations, the plaintiff reported the abuse to her parents and a church leader, the court concluded that the plaintiff "reasonably should have been aware of that injury at th[e] time." *Id.*

Unlike the plaintiffs in *Clay* and *Parks*, Plaintiffs here allege that they "suppressed the memories of the abuse they suffered as minors until recently." (Compl. ¶ 101.) Plaintiffs do not state that *they* were the ones to report the abuse to the District—which would suggest Plaintiffs "reasonably should have been aware of [their] injuries." *Parks*, 737 N.E.2d at 295. Rather, Plaintiffs allege that the District had received "reports of abuse dating as far back as 1970's and continuing through . . . 2009." (*see e.g.*, *id.* ¶ 167.) On its face, this does not "give rise to an immediate awareness of injury." *Clay*, 727 N.E.2d at 222. On the contrary, the Complaint states that Miller's abuse caused physical and psychological injuries to Plaintiffs that prevented them from discovering that they had been sexually abused and injured until July 2019. (Compl. ¶¶ 30, 44, 53, 64, 83, 92.) Each Plaintiff alleges that he "has incurred and will continue to incur expenses for psychological treatment, therapy, and counseling" as a result of those injuries. (*Id.* ¶¶ 29, 43, 52, 63, 82, 91.)

Accepting Plaintiffs John Doe, Wolfgram, and de Koning's allegations as true, Plaintiffs repressed memories of the abuse and were unaware of the conduct charged

until July 2019. Other courts in this District have refused to dismiss similar complaints as untimely. *See, e.g.*, *Tate v. Sheahan*, 2019 WL 2248543, at *2 (N.D. Ill. May 24, 2019) (plaintiff alleged she had repressed the sexual abuse until a mental health professional explained to her the injury); *Doe v. Soc'y of the Missionaries of the Sacred Heart*, 2012 WL 5499430, at *4 (N.D. Ill. Nov. 13, 2012) (plaintiff's "memory of the abuse . . . was not in his conscious awareness throughout his adolescent and adult life" until an incident "triggered a flood of memories" about the sexual abuse). Accordingly, and although a more developed record may show that Plaintiffs Wolfgram, Holvenstot, and John Doe were aware of Miller's actions and that they caused Plaintiffs injury sooner, the Complaint does not clearly demonstrate that the statute of limitations bars their claims. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (courts may dismiss a complaint "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous").

### 2. Fraudulent Concealment

Separately, Plaintiffs contend that their claims are timely under the fraudulent concealment doctrine, as codified in 735 ILCS 5/13-215. Plaintiffs argue that the District both "actively concealed knowledge of Miller's abuse from students and parents" by holding Miller out as an "upstanding teacher," and "forged a close relationship between teachers and students" that created a duty for the District to reveal its knowledge about Miller's conduct. (Dkt. 21 at 5–7.) Although the discovery rule cannot save an action that has expired under a statute of repose, the fraudulent

15

concealment statute may revive a cause of action whether it is barred by a statute of limitations or a statute of repose. *Wisniewski v. Diocese of Belleville*, 943 N.E.2d 43, 72 (Ill. App. Ct. 2011).

Where a cause of action is fraudulently concealed by the liable person, the party entitled to the knowledge has five years after they discover the cause of action to file a complaint. 735 ILCS 5/13-215 (West 2012). To establish that the limitations period should be tolled based on fraudulent concealment, Plaintiff must demonstrate that the District engaged in " 'affirmative acts or representations which [were] calculated to lull or induce [Plaintiffs] into delaying filing of [their] claim or to prevent [Plaintiffs] from discovering [their] claim[s].' " *Boy Scouts of Am.*, 66 N.E.3d at 456 (quoting *Wisniewski*, 943 N.E.2d at 73). Generally, "mere silence on the part of the defendant and failure by the plaintiff to discover a cause of action is not enough to establish fraudulent concealment." *Id.* But where there is a "special relationship" between the plaintiff and the defendant that creates a "duty to reveal the facts to the plaintiff," silence can be "as fraudulent as an actual affirmative false representation or act." *Wisniewski*, 943 N.E.2d at 73.

The District argues that it "cannot conceal information it does not possess." (Dkt. 16 at 5.) To that end, the District contends that Plaintiffs have failed to show that the District knew of Miller's abuse; that it acted with intent to "lull or induce" Plaintiffs to fail to discover their individual claims; or that, as a matter of law, a "special relationship" exists between a school district and a student to support a claim of fraudulent concealment by way of omission. (Dkt. 22 at 4–7.)

16

Turning first to the District's knowledge of Miller's conduct, the Complaint sufficiently states that the District was aware of the alleged abuse. Plaintiffs state that Miller's sexual abuse "was reported to the principal of [the District] by a parent," by "the early 1980's." (Compl. ¶ 93.) It is also alleged in the Complaint that sometime "prior to 2009, when Miller eventually resigned, teachers, parents, village residents, and school administrators reported their concerns regarding Miller's conduct to [the District]." (*Id.* ¶ 95.) Finally, the Complaint also maintains that the District "knew about widespread rumors that had been circulating for years throughout the school" about Miller's conduct (*id.* ¶ 96), but "turned a blind eye" by choosing not to "document any of these complaints, intervene, investigate, or otherwise act in response to these complaints." (*Id.* ¶ 97.) Taking Plaintiffs' allegations—even if broadly worded—as true, the Complaint adequately "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations." *Brooks*, 578 F.3d at 581 (cleaned up).

The District also argues that Plaintiffs' failure to identify which specific individuals informed the District of the abuse when it occurred or at any time after it happened renders the Complaint deficient. (Dkt. 22 at 5 (citing *Horn v. Goodman*, 60 N.E.3d 922, 928–29 (Ill. App. Ct. 2016) (no fraudulent concealment at the motion-to-dismiss stage where plaintiff failed to allege that he or the aggressor informed the defendant of the abuse and the plaintiff offered no facts that the defendant knew of the abuse).)

First, unlike the plaintiffs in *Horn*, Plaintiffs here need not plead with specificity at the motion-to-dismiss stage in federal court. *See Johnson v. Hondo, Inc.*, 125 F.3d 408, 417 (7th Cir. 1997) (overruled in part on other grounds) ("[I]t is rudimentary that pleading requirements in the federal courts are governed by the federal rules and not by the practice of the course in the state in which the federal court happens to be sitting." (quotation omitted)). Instead, drawing all reasonable inferences in Plaintiffs' favor, the Complaint sufficiently states an argument that Defendants knew of Miller's alleged behavior. *See Tamayo,* 526 F.3d at 1081.

Second, Plaintiffs allege enough facts to support that the District took affirmative steps to prevent Plaintiffs from discovering their claims. Plaintiffs state that the District, despite knowing of Miller's conduct, "allowed [him] to quietly resign" (*id.* ¶ 98) and "held Miller out to be an upstanding teacher by continuing to allow and encourage Miller to have unfettered access to students both as a teacher and as the director of Tech Crew" (*id.* ¶ 99.) Plaintiffs sufficiently plead that the District, by "placing Miller in charge of the Theater, Tech Crew, and Telecom programs," (*id.* ¶ 180), engaged in "affirmative acts" intended to prevent Plaintiffs from discovering their injuries. *See Boy Scouts of Am.*, 66 N.E.3d at 456.

Third, Plaintiffs plausibly allege that the district "fostered a special relationship" between teachers and students by holding out its agents, including Miller, as "authority figures." (Compl. ¶ 135.) To state a claim of fraudulent concealment based the District's silence, Plaintiffs must establish that "a special relationship" existed between Plaintiffs and the District that placed the District "in

a position of influence and superiority over [Plaintiffs]," thereby creating "a duty to reveal the facts to [Plaintiffs]." *Wisniewski*, 943 N.E.2d at 73–74. Plaintiffs allege that the District "fostered a special relationship" between teachers and students by allowing Miller to use school grounds after-hours to congregate with students and to go on overnight trips with students. (Compl. ¶¶ 135, 137–40.) Reviewed as a whole, the Complaint adequately alleges that the District "fraudulently concealed [] knowledge" of Miller's abuse. (*See* Compl. ¶ 99.)

The District relies on several cases for the proposition that a school, as a matter of law, owes no duty to protect a student who was allegedly sexually abused by a teacher. (Dkt. 22 at 6–7 (citing *Jane Doe-3 v. McLean Cty. Unit Dist. No. 5 Bd. Of Directors*, 973 N.E.2d 880, 888 (Ill. 2012); *Nabozny v. Podlesny*, 92 F.3d 446, 459 (7th Cir. 1996); *J.O. v. Alton Cmty. Unit Sch. Dist. 11*, 909 F.2d 267, 272 (7th Cir. 1990)).) These cases are unpersuasive because "they do not analyze the relationship between a [student] and a [school] in terms of applying the fraudulent concealment statute." *Wisniewski*, 943 N.E.2d at 75. In view of the undeveloped nature of the caselaw on the issue of what kinds of relationships qualify, as a matter of law, as "special" in the context of a fraudulent concealment argument, the Court defers its ruling on this issue at this time. *See id.* at 81 (application of the fraudulent concealment doctrine "is usually a question of fact"). Although Plaintiff will ultimately bear the burden to prove fraudulent concealment, Plaintiff has sufficiently made out a claim under the fraudulent concealment doctrine to survive the motion-to-dismiss stage. *See In Re Copper Antitrust Litig.*, 436 F.3d 782, 790–91 (7th Cir. 2006),

Based on these facts, which the Court must accept as true, it is not clear from the Complaint that Plaintiffs fail to satisfy the elements of fraudulent concealment. Unlike the discovery rule, the fraudulent concealment doctrine can toll a statute of repose "if a plaintiff does not discovery his claim due to fraudulent concealment on the party of the defendant." *Wisniewski*, 943 N.E.2d at 70. Accordingly, Plaintiffs John M., Holvenstot, and Jonathan M.'s claims are not incurably extinguished by the statute of repose, and may possess claims to toll under the fraudulent concealment doctrine if they prevail on the merits at a later stage. *See N. Trust Co.*, 372 F.3d at 888 ("Even with respect to elements of the plaintiff's claim, complaint need not plead facts or legal theories.").

### 3. Equitable Estoppel

Plaintiffs contend that, because the District concealed its knowledge of Miller's conduct, Defendants are equitably estopped to invoke the statute of repose. (Dkt. 21 at 7.) As with the fraudulent concealment statute, the essence of the doctrine is that "one cannot justly or equitably lull his adversary into a false sense of security, causing him to subject his claim to the bar of the statute, and then plead the very delay caused by his course of conduct." *Beynon Bldg. Corp. v. Nat'l Guardian Life Ins. Co.*, 455 N.E.2d 246, 252 (Ill. App. Ct. 1983). Unlike fraudulent concealment, however, equitable estoppel "may arise even though there was no intention on the part of the party estopped to relinquish any existing right." *Anderson v. Holy See*, 878 F. Supp. 923, 935 (N.D. Ill. 2012).

For the same reasons Plaintiffs have sufficiently stated a claim for fraudulent

concealment based on affirmative acts, Plaintiffs have met their burden at this stage on the issue of equitable estoppel. Similar to the fraudulent concealment doctrine, the principle of equitable estoppel apply to a statute of repose as well as the limitations period. *See Witherell*, 515 N.E.2d at 73. As such, Plaintiffs John M., Holvenstot, and Jonathan M. may also possess claims to estop the District to assert a statute of limitations defense at a later stage. *See N. Trust Co.*, 372 F.3d at 888 ("Resolving defenses comes after the complaint stage.").

In summary, it is not clear from the face of the Complaint that Plaintiffs have pleaded themselves out of court by admitting the elements of the statute of limitations defense. *See Walker*, 288 F.3d at 1010. Accordingly, the Complaint cannot be dismissed as untimely at this stage. *See N. Trust Co.*, 372 F.3d at 888 (noting that dismissing a case as untimely based on the allegations of a complaint is "irregular").

## B.    Tort Immunity

The District contends that it is immune from suit under various provisions of the Illinois Tort Immunity Act and the Illinois School Code for injuries resulting from the exercise of its discretionary authority, failure to supervise, and ordinary negligence (Dkt. 16 at 5–8.) Plaintiffs respond that the Complaint does not contain sufficient information for the Court to find that immunity is available under any of these provisions at the motion-to-dismiss stage. (Dkt. 21 at 7–13.) Each contention is addressed in turn.

As with a statute of limitations, the Tort Immunity Act provides affirmative defenses for which the District has the burden of proof. *See Van Meter v. Darien Park*

*Dist.*, 799 N.E.2d 273, 280 (Ill. 2003). As explained more fully below, Plaintiffs do not plead facts sufficient to implicate the Act at this stage of the litigation. Accordingly, the Court defers its decision on the District's immunity under the Tort Immunity Act and the Illinois School Code until the parties have developed a more complete factual record.

### 1. Immunity for Discretionary Acts

The District argues that it is immune under Section 2-201 of the Tort Immunity Act for all personnel and investigatory decisions, including the decision not to investigate allegations of Miller's conduct or terminate Miller's employment, as well as its decision to allow Miller to "quietly resign." (Dkt. 16 at 6–7.) Section 2-201 provides that:

> A public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201.

Although this section only expressly immunizes "public employees," local public entities like the District "are also clothed with immunity if their employees are not liable for the injury resulting from their acts or omissions." *La Porta v. City of Chi.*, 277 F. Supp. 3d 969, 997 (N.D. Ill. 2017) (citing *Arteman v. Clinton Cmty. Unit Sch. Dist. No. 15*, 763 N.E.2d 756, 762–63 (Ill. 2002)). This section has been interpreted by the Illinois Supreme Court to apply only where the public employee's actions involve "*both* a determination of policy *and* an exercise of discretion." *Id.* (citing *Van Meter*, 799 N.E.2d at 283).

22

The District argues that section 2-201 shields it from liability for injuries resulting from its decisions related to hiring, retention, supervision, training of employees, and internal investigations. (Dkt. 16 at 6.) According to the District, all personnel and investigatory-related decisions require discretion and determination of policy. (*Id.* at 6–7 (citing *Reed v. City of Chi.*, 2002 WL 406983, at *3 (N.D. Ill. Mar. 14, 2002) ("While there are most likely guidelines in hiring, training and supervising employees, all three acts still require discretion, balancing of interests, and judgment calls.").).) Because there was no legal mandate to train and educate school employees about sexual abuse during the relevant period, the District argues that "whether and how [it] decided to supervise, train, and educate its employees was a matter of discretion and determination policy." (Dkt. 22 at 9.)

Although the District may ultimately prevail on this argument, it is not clear from the face of the Complaint that such decisions fall within the ambit of section 2-201. Contrary to ministerial acts, "which a person performs . . . without reference to the official's discretion as to the propriety of the act," discretionary acts "are those which are unique to a particular public office." *Van Meter*, 799 N.E.2d at 380. But section 2-201 analysis "resists precise formulation." *See Doe v. Thorton Twp. High Sch. Dist. 205 Bd. of Educ.*, 2021 WL 1172608, at *7 (N.D. Ill. Mar. 29, 2021) (quoting *Snyder v. Curran Twp.*, 657 N.E.2d 988, 992 (Ill. 1995)). Plaintiffs allege that the District had "policies, de facto practices, and customs in place" to withhold allegations of sexual misconduct, not to fully investigate allegations of sexual misconduct, not to remove employees accused of sexual misconduct, and that the District was

"deliberately indifferent to the known risk" of such policies. (Compl. ¶¶ 192–95.) In view of Plaintiffs' allegations, which the Court must accept as true, it not apparent from the face of the Complaint that the District's alleged acts and omissions were discretionary as a matter of law.

Moreover, before the Court "can determine whether [the District] is immune from negligence liability based upon willful and wanton acts or omissions, it must first determine if any duty of care by the public entity exists." *Doe*, 2021 WL 1172608, at *7. Just as the Court cannot, as a matter of law, determine whether a special relationship existed between Plaintiffs and the District in the context of the fraudulent concealment statute, the Court cannot identify from the face of the Complaint whether the District owed Plaintiffs a duty in the context of section 2-201. It is unclear on the face of the Complaint who made the decisions not to fire Miller, or not to investigate the reports of abuse, or not to notify the students and parents of the abuse, or to allow Miller to "quietly resign." It thus cannot be presently concluded by the Court, as a matter of law, that Section 2-201 immunity applies.

The District cites several cases in which other judges in this District have dismissed allegations "similar to those made by Plaintiff[s]" based on section 2-201 immunity. (Dkt. 22 at 8–9 (citing *Moore v. Bd. Of Educ. of City of Chi.*, 300 F. Supp. 2d 641, 644 (N.D. Ill. 2004); *Reed v. City of Chi.*, 2002 WL 406983, at *3 (N.D. Ill. Mar. 14, 2002); *Hartman v. Lisle Park Dist.*, 158 F. Supp. 2d 869, 877 (N.D. Ill. 2001); *Jackson v. City of Chi.*, 1997 WL 285770, at *1 (N.D. Ill. May 22, 1997); *Taylor v. City of Chi.*, 1997 WL 51445, at *4, *6 (N.D. Ill. Feb. 3, 1997); *Collins v. Metcalfe*, 1996 WL

24

637592, at *3 (N.D. Ill. Oct. 18, 1996).) But none of these cases involved claims that the defendant possessed knowledge of the complained of conduct and intentionally failed to take action, or that the conduct involved sexual abuse—distinctions that may prove to be significant in the context of a Section 2-201 analysis. *See Snyder*, 657 N.E.2d at 992–93 ("[W]hether acts are discretionary or ministerial must be made on a case-by-case basis.").

The District also cites *Thompson v. Bd. of Educ. Twp. High Sch. Dist. 113*, 2015 WL 12660367 (Ill. Cir. Ct. Jan. 23, 2015) for the same proposition. (Dkt. 22 at 9.) *Thompson* is not only not binding on this Court, but also distinguishable from this case. In *Thompson*, the court acknowledged that "the outer limits of the definition of 'discretionary' are murky," but ultimately found the complaint sufficient to find immunity under the Act. 2015 WL 12660367, at *7. Unlike here, the individual defendants who made the allegedly discretionary decisions in *Thompson* were identified and named as Defendants. Neither the District nor Plaintiffs have identified who made the decisions for which the District seeks immunity. Because the District bears the burden to prove the affirmative defense of governmental immunity, the Court cannot at this stage conclude as a matter of law that Section 2-201 immunity applies. *See Van Meter*, 799 N.E.2d at 380.

2.    *In Loco Parentis* and Supervisory Immunity

The District argues that it is entitled to qualified immunity under section 24-24 of the Illinois School Code and section 3-108 of the Illinois Tort Immunity Act for claims arising from negligent supervision. (Dkt. 16 at 7–8.) Section 3-108 provides

that "neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury." 745 ILCS 10/3-108(a). Willful and wanton conduct is defined in the Act as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210.

Similarly, Section 24-24 of the Illinois School Code confers *in loco parentis* immunity upon school districts from suits for negligence as to any activities connected with school programs, 105 ILCS 5/24-24; *Hopwood v. Elmwood Cmty. High Sch. Dist. 322*, 525 N.E.2d 247, 248–49 (Ill. App. Ct. 1988). Like supervisory immunity, *in loco parentis* immunity does not apply to willful and wanton conduct. *Hopwood*, 525 N.E.2d at 248–49 ("In the absence of proof of willful and wanton misconduct . . . school districts are not liable for ordinary negligence.").

Plaintiffs allege that the District had a duty to supervise Miller and his activities with students, and acted with "deliberate or reckless disregard for [P]laintiffs' safety and wellbeing" by ignoring the alleged sexual abuse. (Compl. ¶¶ 126–27.) Plaintiffs state that the District had actual knowledge of Miller's behavior, but recklessly or intentionally allowed Miller to continue his employment and implemented no restriction to Miller's access to students. (*Id.* ¶ 127.) Plaintiffs allege that the District possessed knowledge of Miller's sexual misconduct towards male

students and then allowed him to continue to have isolated access to such students despite the known risk of sexual abuse, which continued to occur. (*Id.* ¶¶ 126–27.) Plaintiffs contend that the District's omissions caused Plaintiff personal, emotional, and pecuniary injuries. (*Id.* ¶ 119.)

Assuming these allegations are true, the District capacitated the sexual abuse of the minors; and this would constitute willful and wanton conduct under the Act. *See Doe*, 2021 WL 1172608, at *8 (defendants alleged to have "effectively allowed the sexual abuse of the minors they were charged to protect and educate" constitutes willful and wanton conduct). Accordingly, the Court cannot dismiss Plaintiffs' claims under either section 3-108 of the Act or section 24-24 of the Illinois School Code. *See Van Meter*, 799 N.E.2d at 284 (an affirmative defense "must be apparent on the face of the complaint").

### C. Plausibility of Plaintiffs' Claims

Finally, the District argues that all of Plaintiffs' claims must be dismissed for failure to state a claim. (Dkt. 16 at 9–14.) In view of the liberal requirements of notice pleaded, as explained regularly by our Circuit's Court of Appeals, Plaintiffs have sufficiently stated their claims against the District to survive a motion to dismiss. *See Brooks*, 578 F.3d at 581 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (quotation omitted)).

### 1. Child Abuse, Battery, and IIED (Counts I, II, and VII)

The District contends that, as a matter of law, it cannot be held liable for

Miller's alleged sexual abuse, battery, and intentional infliction of emotional distress because such conduct fell outside the scope of Miller's employment. (Dkt. 16 at 9.) Plaintiffs do not object to the dismissal of Count I (childhood sexual abuse) and Count II (battery) with respect to the District, but respond that Count VII does not rest on a vicarious liability theory of harm against the District. (Dkt. 21 at 13–14.) Instead, Plaintiffs argue that the District's knowledge of Miller's abuse and failure to intervene and protect Plaintiffs constituted extreme and outrageous conduct *ipso facto*. (*Id.* at 14.) Although the District raises no other argument in support of its motion to dismiss Count VII, the Court nevertheless reviews the plausibility of Plaintiff's IIED claim.

To state a claim for IIED against the District, Plaintiffs must adequately plead that the District: (1) engaged in extreme and outrageous conduct; (2) either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) actually caused severe emotional distress. *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 859 (N.D. Ill. 2010). To qualify as outrageous, conduct must be "so extreme as to go beyond all possible bounds of decency." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83 (Ill. 2003). And "the more control a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous." *Wordlow v. Chi. Bd. of Educ.*, 2018 WL 6171792, at *13 (N.D. Ill. Nov. 26, 2018).

Plaintiffs allege that Miller's sexual conduct was extreme and outrageous, the District knew about it, and, by failing to take any action in response to it, enabled it

to continue. (Compl. ¶¶ 145–47.) If true, Miller's sexual abuse of minor male students constitutes extreme and outrageous conduct. And, if true, the District's knowledge of the abuse as the employer supervising Miller with "assumed responsibility for the well-being of minor students," (*see* Compl. ¶ 8), and subsequent failure to intervene, could reasonably be read as a license to Miller to continue. If proven, purposefully covering up evidence of a minor's sexual abuse could reasonably constitute extreme and outrageous conduct likely to cause severe emotional distress. *See Brookman ex rel. A.B. v. Reed-Custer Cmty. Unit, Sch. Dist. 255-U*, 2019 WL 4735395, at \*5–6 (N.D. Ill. Sep. 27, 2019). Plaintiffs plead enough facts to raise a right to relief beyond the speculative level. *See Brooks*, 578 F.3d at 581. Accordingly, Count VII is not dismissed as against the District. Per Plaintiffs' response, Counts I and II are dismissed as against the District.

## 2. Willful and Wanton, Negligence, and Derivative Claims (Counts III, IV, V, VI, VIII, X, XI)

The District argues that, because it owes no duty to protect students from criminal attacks by others, Plaintiffs failed to plead a duty as required to bring a willful and wanton or a negligence claim against it. (Dkt. 16 at 9–11.) Plaintiffs respond that the District's duty arises out of its "special relationship" with Plaintiffs and its duty to report Miller's abuse under the Abused and Neglected Child Reporting Act, 325 ILCS 5/1 *et seq*. (Dkt. 21 at 14–18.)

Under the Illinois Abused and Neglected Child Reporting Abuse Act ("ANCRA"), "school personnel" who have "reasonable cause to believe" that a student has suffered abuse must notify the Illinois Department of Children and Family

29

Services. 325 ILCS 5/4. But ANCRA's mandate to report child abuse does not create a duty to the abused child or otherwise give rise to a private tort action "unless the violation also breached a common law duty of care owed to the plaintiff." *Doe-2 v. McLean Cty. Unit. Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 514 (7th Cir. 2010). To determine whether the Complaint sufficiently alleges that the District owed Plaintiffs a duty, the Court must look to Illinois's common law.

To state a common law claim for willful and wanton misconduct, Plaintiffs must establish "the same basic elements of a negligence claim, which are the existence of a duty, breach of that duty, and an injury proximately resulting from the breach." *Id.* In addition to those elements, Plaintiffs must show that the District's breach was made with " 'conscious disregard for [Plaintiffs'] welfare.' " *Id.* (quoting *Ortega-Piron ex rel. Doe v. Chi. Bd. of Educ.*, 820 N.E.2d 418, 423 (Ill. 2004)). Although there is no affirmative duty to protect another from criminal attack by a third person, *see Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007), Illinois courts have recognized that some relationship between a public school district and its students create a common law duty to protect in some cases. *See, e.g.*, *Doe-2*, 593 F.3d at 514–15 (collecting cases). A school district with "unique knowledge that one of its teachers or students poses a particular threat to another student may acquire a duty to protect." *Id.* at 515 (citing *Ortega-Piron ex rel. Doe*, 820 N.E.2d at 423–24).

Taking Plaintiffs' allegations as true, the Complaint states facts sufficient to create a plausible inference that the District possessed a duty toward Plaintiffs. Plaintiffs allege that the District was on notice of Miller's conduct and so possessed a

duty to "exercise the utmost care for the welfare and wellbeing of the minor students at Lake Forest High School." (Compl. ¶ 126.) This duty included, among other things, an obligation to adequately supervise Miller, investigate complaints about Miller, and implement restrictions to Miller's access to students. (*Id.* ¶ 127.) As the Court already addressed, Plaintiffs sufficiently plead that the District possessed knowledge of Miller's conduct at all relevant times. (*Id.* ¶¶ 93, 95, 96, 97.) And if discovery proves these allegations of knowledge to be true, such "unique knowledge" may give rise to a duty to protect. *See Doe-2*, 593 F.3d at 514–15.

Reviewed as a whole, the Complaint adequately pleads that the District was in a "special relationship" with Plaintiffs that could trigger a common law duty to protect Plaintiffs as required to bring a willful and wanton claim. *See id.* at 514–15. For the same reasons, Plaintiffs also adequately state a claim for negligence against the District. Accordingly, the motion to dismiss Counts III, IV, V, VI, VIII, X, XI is denied.

### 3.   Title IX (Count XI)

The District contends that Plaintiffs also fail to state a claim of sex discrimination under Title IX because Plaintiffs have not shown that the Board had "actual notice" of Miller's misconduct towards Plaintiffs specifically. The District also argues that Plaintiffs failed to show that they were denied any benefits of the Board's services because of the misconduct. (Dkt. 16 at 11–12.)

Title IX prohibits sex discrimination by recipients of federal education funding. 20 U.S.C. § 1681(a); *Jackson v. ]Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).

A school district may not be held vicariously liable under Title IX for an employee's violation of the statute. *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998)). But the District may be held personally liable under Title IX if, with "authority to institute corrective measures," the District had "actual notice of, and [was] deliberately indifferent to, the teacher's misconduct." *Doe*, 694 F.3d at 871.

To state a claim under Title IX, plaintiffs must plead that: (1) the education institution received federal funding; (2) the harassment was based on sex; and (3) the harassment was so pervasive or severe that it altered the conditions of plaintiffs' education, or deprived plaintiffs of access to educational opportunities or benefits provided by the school. *Doe v. Bd. of Educ. of City of Chi.*, 611 F. Supp. 3d 516, 527 (N.D. Ill. 2020). These elements are sufficiently alleged by the Complaint. The District was an educational institution that received federal funding. (Compl. ¶ 162.) Plaintiffs—who are all male—were sexually abused by Miller based on their sex. (*Id.* ¶ 165.) Miller's sexual abuse of Plaintiffs when they were minors deprived them of access to educational opportunities. (*Id.* ¶ 168.) And as addressed in previous sections of this opinion, the Complaint adequately states that the District had "actual notice" of Miller's misconduct and authority to take corrective actions.

The District challenges Plaintiffs' failure to specifically identify how they were deprived access to educational opportunities. But "courts recognize that harassment by a teacher inherently harms students and affects their educational experience." *Doe I v. Bd. of Educ.*, 364 F. Supp. 3d 849, 861 (N.D. Ill. 2019). Although Plaintiffs will

eventually need to prove this element, "plaintiffs need not allege specific facts showing precisely how their academic performance was affected" at the motion-to-dismiss stage. *Id.* For the foregoing reasons, the motion to dismiss Count XI is DENIED.

### 4. Section 1983 and *Monell* Liability (Counts XII and XIII)

Finally, the District argues that Plaintiffs' Due Process claim (Count XII) must be dismissed against it as duplicative of Plaintiffs' *Monell* claim. The District also argues that Plaintiffs' *Monell* claim (Count XIII) must be dismissed because Plaintiffs have failed to allege an underlying cognizable Fourteenth Amendment due process violation. (Dkt. 16 at 12–14.) Plaintiffs do not object to the dismissal of Count XII against the District, but contend that the District violated Plaintiffs' constitutional rights "by displaying reckless indifference to Plaintiffs by acting under customs, policies or practices which encouraged or allowed Miller's sexual abuse of Plaintiffs to occur." (Dkt. 21 at 22–24.)

To state a *Monell* claim against the District, Plaintiffs must plausibly allege that "an official policy, however expressed . . . caused the constitutional deprivation." *Glisson v. Indiana Dep't of Corrs.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc). An "actual constitutional claim" must be established by the face of the complaint. *See Contreras v. City of Chi.*, 119 F.3d 1286, 1294 (7th Cir. 1997) (disentangling "what constitutes a constitutional violation and what makes a municipality liable for constitutional violations").

Plaintiffs allege that Miller's sexual abuse violated Plaintiffs' Fourteenth

Amendment right "to be free of state-occasioned damage to [their] bodily integrity, including childhood sexual abuse." (Compl. ¶¶ 176, 191.) According to the Complaint, the District had policies, practices, and customs in place to withhold and not investigate allegations of sexual misconduct and not to remove agents and employees accused of sexual misconduct. (*Id.* ¶¶ 193–95.) And because of such policies, practices, and customs, Plaintiffs' rights were violated. (*Id.* ¶¶ 196–97.)

It is well established that "a state ordinarily has no constitutional duty to protect private citizens from doing harm to each other." *Waubanascum v. Shawano Cty.*, 416 F.3d 658, 665 (7th Cir. 2005) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 109 (1989)). Axiomatically, "a state's failure to protect an individual from private injury does not violate that individual's due process rights." *Id.* Two exceptions to this general rule have nonetheless been recognized by the Seventh Circuit: *first*, when the state has established a "special relationship" with an individual, and *second*, where the state "affirmatively places a particular individual in a position of danger the individual would not have otherwise face." *Id.* (citing *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998)).

To qualify for the "special relationship" exception, "the state must have *custody* over" the individual. *Id.* at 665. Such "custody" arises only where the state constrains the individual's "freedom to act on his own behalf." *DeShaney*, 489 U.S. at 198–201. Such custody does not generally exist between students and the state in the Seventh Circuit. In *J.O. v. Alton Community Unit School District 11*, the Seventh Circuit expressly rejected the argument that students are persons with whom the state has

34

a special relationship. 909 F.2d 267, 272 (7th Cir. 1990) ("[T]he government, acting through local school administrations, has not rendered its schoolchildren so helpless that an affirmative constitutional duty to protect arises."). In so holding, the Seventh Circuit distinguished its ruling from an earlier holding of the Third Circuit, *Stoneking v. Bradford Area School District*, 882 F.2d 720 (3d Cir. 1989), that held school officials could be held liable for adopting policies that were deliberately indifferent to the constitutional right of students to bodily integrity. *J.O.*, 909 F.2d at 271–72. And, as the *J.O.* court itself suggested, the *Stoneking* theory of liability remains viable. *T.E. v. Grindle*, 599 F.3d 583, 590 (7th Cir. 2010) (collecting cases applying *Stoneking*).

As in *Stoneking*, Plaintiffs are not relying on a theory of "mere failure of supervisory officials to act" in violation of the Due Process Clause. *See Stoneking*, 882 F.2d at 730. Rather, Plaintiffs allege that the District is liable for concealing reports of abuse and creating an environment that allowed Miller's abuse to flourish. Plaintiffs specifically accuse the District of maintaining policies and practices not to investigate allegations of sexual misconduct, not to remove employees accused of sexual misconduct from students, and to withhold information about teacher sexual abuse from parents and students. Given the prohibition against *respondeat superior* liability in section 1983 suits, Plaintiffs do not argue that the District is liable merely as Miller's employer. *See Monell v. Department of Social Services of City of New York*, 438 U.S. 658, 691 (1978). Instead, Plaintiffs argue that the District had a "special relationship" with its students, imposing an affirmative duty to provide for their safety and to prevent the child abuse that occurred here. (Compl. ¶¶ 135–42.)

Reviewed as a whole, the Complaint satisfies the minimum pleading requirements to state a *Monell* claim against the District. *See McCormick v. City of Chi.*, 230 F.3d 319, 323 (7th Cir. 2000). Indeed, the Seventh Circuit allows a "conclusory" *Monell* claim to survive a motion to dismiss when it is "sufficient to put the [local governing body] on notice of [plaintiff's] claim against it" and if the plaintiff gives the defendant "notice of the crux of the plaintiff's charges" and does not "[leave] out facts necessary to give the defendants a complete understanding of the claims made against them." *Id.* at 325. Although Plaintiffs have a long way to go to prove their *Monell* claim, Plaintiffs have adequately met the notice pleading requirements to survive a motion to dismiss. For the foregoing reasons, the motion to dismiss Count XIII is denied. Per Plaintiffs' response, Count XII is dismissed as against the District.

## IV.    CONCLUSION

Defendants' motions to dismiss are largely denied. Per the parties' agreement, Counts I, II, and XII are dismissed as against the District only.

SO ORDERED in No. 21-cv-02755.

Date: September 30, 2023

JOHN F. KNESS
United States District Judge

36